United States Court of Appeals
Fifth Circuit

**F I L E D**

March 15, 2007

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 05-10962

_____

ILLUSIONS - DALLAS PRIVATE CLUB, INC., a Not-for-Profit Texas Corporation, doing business as Penthouse Key Club; HOTEL DEVELOPMENT TEXAS LTD., a Texas Limited Liability Company; SILVER CITY, an Unincorporated Membership Organization; GREEN STAR, INC., a Texas Corporation,

Plaintiffs - Appellants,

versus

JOHN T. STEEN, JR., in his Official Capacity as Chairman of the Texas Alcoholic Beverage Commission; GAIL MADDEN, in her Official Capacity as a Member of the Texas Alcoholic Beverage Commission; ALAN STEEN, in his Official Capacity as Administrator of the Texas Alcoholic Beverage Commission,

Defendants - Appellees.

_____

PLANO MILLER CLUB INC., a Non-Profit Texas Corporation; ADVENTURE PLUS ENTERPRISES INC., doing business as P. T.'s, also known as The Gold Club,

Plaintiffs-Appellants,

versus

JOHN T. STEEN, JR., in his Official Capacity as Chairman of the Texas Alcoholic Beverage Commission; GAIL MADDEN, in her Official Capacity as a Member of the Texas Alcoholic Beverage Commission; ALAN STEEN, in his Official Capacity as Administrator of the Texas Alcoholic Beverage Commission,

Defendants - Appellees.

_____

Appeals from the United States District Court
for the Northern District of Texas

_____

Before REAVLEY, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Illusions-Dallas Private Club, Inc., Hotel Development Texas Ltd., Silver City, and Green Star (collectively, "the Clubs") challenge a Texas statute that prevents sexually oriented businesses located in certain political subdivisions from obtaining or renewing permits to serve alcohol. The district court granted summary judgment against the Clubs on their constitutional claims. For the following reasons, we affirm in part and reverse in part.

## I. FACTS AND PROCEEDINGS

The Clubs are private membership adult cabarets located in non-residential areas of Dallas, Texas. The Clubs feature sexually oriented dancing and are regulated as sexually oriented businesses ("SOBs") under Texas law and Dallas ordinances. Texas law allows political subdivisions to determine whether they will permit the sale of alcoholic beverages within their borders. *See* TEX. ALCO. BEV. CODE § 251.01.[1] The Clubs are located in political subdivisions that have elected to be dry. As such, the Clubs cannot sell alcoholic beverages unless they obtain a Private Club Registration Permit ("club permit") in accordance with the Texas Alcoholic Beverage Code. The Clubs currently have club permits and serve alcohol while offering sexually oriented dancing as entertainment.

Section 32.03(k) of the Texas Alcoholic Beverage Code was enacted by the state legislature in October 2003 as House Bill 7. It prohibits the issuance of club permits to SOBs operated in dry

_____

[1]After the Clubs brought suit, the Texas legislature repealed those sections of the Texas Alcoholic Beverage Code dealing with political subdivisions' election to allow or prohibit the sale of alcoholic beverages, including TEX. ALCO. BEV. CODE § 251.01. The legislature replaced the repealed sections with similar laws, which also allow political subdivisions to hold elections to determine whether to allow the sale of alcoholic beverages. *See* TEX. ELEC. CODE § 501.021 *et seq.*

political subdivisions and prohibits the renewal of existing club permits.[2] Section 32.03(k) thus denies the Clubs, as SOBs operating in dry political subdivisions, the ability to serve alcohol.

Following the Texas legislature's enactment of § 32.03(k), the Clubs sued John T. Steen and Gail Madden, in their respective capacities as members of the Texas Alcoholic Beverage Commission ("TABC"); and Alan Steen, in his capacity as Administrator of the TABC, (collectively, "the State"). The Clubs' complaint, brought pursuant to 42 U.S.C. § 1983, sought declarations that § 32.03(k) was unconstitutional under the First, Fifth, and Fourteenth Amendments and sought to enjoin the individual defendants from enforcing § 32.03(k). In particular, the Clubs asserted that § 32.03(k) violated the Clubs' right to free expression under the First Amendment, their rights to equal protection and due process under the Fourteenth Amendment, and their right to be free from a taking of private property without just compensation, under the Fifth and Fourteenth Amendments.

The State moved for summary judgment on all claims, and the Clubs filed a cross-motion for partial summary judgment on the First Amendment claim. The district court granted summary judgment in favor of the State on the First Amendment claim, finding that the statute was content-

---

[2]Section 21.04 of House Bill 7 reads:
> Section 21.04.
> (a) Section 32.03, Alcoholic Beverage Code, is amended by adding Subsection (k) to read as follows:
>> (k) A private club registration permit may not be issued to or maintained by a club for a premises located in a dry area if the club operates a sexually oriented business, as defined by Section 243.002, Local Government Code, on the premises.
> (b) Section 32.03(k), Alcoholic Beverage Code, as added by this section, applies to a permit issued or renewed on or after the effective date of this section. A permit issued or renewed before the effective date of this section is governed by the law in effect immediately before that date only until the first renewal date for the permit that occurs on or after the effective date of this section, and that law is continued in effect for that purpose.

2003 Tex. Sess. Law Serv., 78th Leg., 3d Called Sess. 104–05.

neutral and that it survived intermediate scrutiny. The district court also granted summary judgment in favor of the State on the Clubs' Fifth and Fourteenth Amendment claims.

The Clubs timely appealed, contending that the district court's grant of summary judgment on the First Amendment and due process claims was erroneous. The Clubs have thus abandoned their equal protection claim and their Fifth Amendment takings claim. *See, e.g.*, *SEC v. Recile*, 10 F.3d 1093, 1096 (5th Cir. 1993) (noting that issues not raised in the briefs are abandoned). On appeal, the Clubs seek an entry of summary judgment in their favor on the First Amendment claim or, in the alternative, a remand for a trial on the First Amendment claim and the due process claim.

## II. STANDARD OF REVIEW

Review of the district court's grant of summary judgment is de novo. *J&B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 365 (5th Cir. 1998). Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). This court may "affirm a grant of summary judgment if [it] find[s] a basis, independent or not of the district court's reasoning, adequate to support the result." *Texas Refrigeration Supply, Inc. v. FDIC*, 953 F.2d 975, 980 (5th Cir. 1992).

## III. DISCUSSION

### A.     Due process claim

The district court found that there was no genuine issue of material fact on the issue of whether the Clubs were deprived of a property interest without due process because § 32.03(k) was a generally applicable legislative enactment and that the legislative process had provided the Clubs all process that was due. We agree. Due process claims are subject to a two part analysis. Courts must first determine whether a property interest exists and, if so, whether the holder of the interest

4

received due process. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982). Assuming that the Clubs have a property interest in the club permits issued by the TABC, they cannot demonstrate that they were denied due process.

"[W]hen a legislature extinguishes a property interest via legislation that affects a general class of people, the legislative process provides all the process that is due." *McMurtray v. Holladay*, 11 F.3d 499, 504 (5th Cir. 1993). The Clubs argue that § 32.03(k) affected a small number of establishments and was narrowly focused on certain SOBs, notwithstanding its broad language and statewide applicability. The Clubs erroneously focus on the total number of establishments ultimately affected by § 32.03(k). The proper focus, however, is on whether the legislature intended to single out certain individuals or establishments. *See id.* (holding that a law extinguishing property rights of certain government employees did not violate due process where "the Act was *intended* to affect *every* employee" (first emphasis added)). Section 32.03(k) was intended to affect every permit-holding club in dry political subdivisions in the entire state of Texas, not any particular establishment or cadre of establishments. The Clubs were not denied due process.

## B.     First Amendment claim

We first address the State's contention that § 32.03(k) does not implicate the First Amendment at all. The State argues that this court should affirm the district court's grant of summary judgment because § 32.03(k) regulates no aspect of expression, does not restrict the time, place, or manner of erotic expression, and does not have even an incidental impact on First Amendment freedoms because nothing about it prevents erotic dance.

The State's argument is not without some force. Section 32.03(k) regulates the Clubs' ability to obtain or renew club permits and, therefore, regulates the Clubs' ability to legally serve alcoholic

5

beverages. What § 32.03(k) does not do is regulate any aspect of the protected expressions included in the performances provided by the Clubs; § 32.03(k) only regulates the Clubs' ability to couple the performances with the service of alcohol. Cases applying First Amendment principles to alcohol regulations similar to § 32.03(k), moreover, have not explicitly addressed the argument, presented here, that alcohol regulations of SOBs do not implicate the First Amendment. They instead proceed directly to the First Amendment analysis. Nonetheless, based on a review of relevant cases from the Supreme Court and from other circuits that have addressed the constitutionality of statutes similar to § 32.03(k), we must conclude that § 32.03(k) sufficiently implicates the First Amendment to warrant further analysis under the relevant First Amendment jurisprudence.

The Supreme Court's opinions support this conclusion. The Court in *California v. LaRue*, 409 U.S. 109, 111–14 (1972), considered the constitutionality of regulations promulgated by California's Department of Alcoholic Beverages ("CDAB"). The California regulations prohibited bars and nightclubs licensed to sell alcoholic beverages by the CDAB from providing sexually-oriented entertainment described as grossly sexual. *See id.* at 118. The Court rejected the First Amendment challenge brought by, *inter alia*, the establishments licensed by the CDAB to serve alcohol. *See id.* 409 U.S. at 110, 118–19. In rejecting this First Amendment challenge, the Court did not hold that the First Amendment was not implicated by California's regulations; instead, the Court held that the regulations did not violate any part of the Constitution. *See id.* at 113, 118. The Court's holding relied on the fact that CDAB's conclusion, as embodied in the regulations, that sexual performances should not occur in the same location where intoxicating liquors were served "was not an irrational one" and was within California's powers. *See id.* at 118–19. The Court also relied on the "added presumption in favor of the validity of the state regulation in this area that the Twenty-first

6

Amendment requires."[3] *See id.* Because the *LaRue* Court held that California's regulations did not violate the Constitution, not that the regulations did not implicate the First Amendment at all, *LaRue* suggests that alcohol regulations of SOBs implicate the First Amendment.

A more recent opinion, *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 515–16 (1996), "disavowed" part of *LaRue* but left intact the part suggesting that alcohol regulations of SOBs implicate the First Amendment. *44 Liquormart* concerned the constitutionality of an alcohol regulation's restriction on commercial speech, namely, "Rhode Island's statutory prohibition against advertisements that provide the public with accurate information about retail prices of alcoholic beverages." *Id.* at 489. The Court held that such an advertising ban was "an abridgement of speech protected by the First Amendment and that is not shielded from constitutional scrutiny by the Twenty-first Amendment." *Id.* Though the Court disavowed *LaRue*'s reliance on the Twenty-first Amendment and concluded that the Twenty-first Amendment "does not qualify the constitutional prohibition against laws abridging the freedom of speech," the Court stated that even if it had not relied on the Twenty-first Amendment, "the Court's analysis in *LaRue* would have led to precisely the same result." *Id.* at 515.

The analysis left intact is that part of *LaRue* that examined whether the Constitution granted California the power to prohibit sexually-oriented entertainment in establishments that the CADB licensed to serve alcohol. *See id.* at 515. The *LaRue* Court, as noted, concluded that California did have such constitutional power and rejected the First Amendment challenge to the California

---

[3]The relevant section of the Twenty-first Amendment, which concerns alcoholic beverages, provides: "The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited." U.S. CONST. amend. XXI, § 2.

regulations. *See LaRue*, 409 U.S. at 113, 118. Accordingly, *44 Liquormart* did not undermine that part of *LaRue* that suggests that the California regulations at issue implicated the First Amendment.

Aside from leaving intact that part of *LaRue* that is important here, *44 Liquormart* supports the notion that § 32.03(k) implicates the First Amendment for another reason. In explaining that *LaRue* was still good law, notwithstanding its reliance on the Twenty-first Amendment, the *44 Liquormart* Court indicated "that the States' inherent police powers provide ample authority to restrict the kind of 'bacchanalian revelries' described in the *LaRue* opinion regardless of whether alcoholic beverages are involved." *44 Liquormart*, 517 U.S. at 515. Importantly, the Court cited two First Amendment cases for the just-quoted proposition. *See id.* (citing *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976), and *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991)).

Since *44 Liquormart*, the Third, Fourth, Sixth, Seventh, and Eleventh Circuits have concluded that the Court's citation to *American Mini Theatres* and *Barnes* requires that alcohol regulations of SOBs be analyzed in light of the First Amendment tests contained therein. *See Ben's Bar v. Vill. of Somerset*, 316 F.3d 702, 712 (7th Cir. 2003) (concluding that prohibitions on the sale of alcohol at adult entertainment establishments must be analyzed in light of *American Mini Theatres* and *Barnes*); *see also 181 South Inc. v. Fischer*, 454 F.3d 228, 233 (3d Cir. 2006) (agreeing with the Seventh Circuit that prohibitions on the sale of alcohol at adult entertainment establishments must be analyzed in light of *American Mini Theatres* and *Barnes*); *Odle v. Decatur County*, 421 F.3d 386, 399 (6th Cir. 2005) (agreeing with the circuit courts that have interpreted *44 Liquormart*'s "reaffirmation of *LaRue*'s holding to mean that the *LaRue* regulations would have survived intermediate scrutiny—and . . . that they would have *had* to survive such scrutiny to comport with the First Amendment"); *Giovani Carandola Ltd. v. Bason*, 303 F.3d 507, 513 n.2 & 519 (4th Cir. 2002) (noting the *44*

8

*Liquormart* Court's reliance on First Amendment cases and holding that "the result reached in *LaRue* remains sound not because a state enjoys any special authority when it burdens speech by restricting the sale of alcohol, but rather because the regulation in *LaRue* complied with the First Amendment"); *Sammy's of Mobile, Ltd. v. City of Mobile*, 140 F.3d 993, 996 (11th Cir. 1998) (reaffirming that the *Barnes* intermediate level of scrutiny, derived from *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968), applies to adult entertainment liquor regulations).[4] Considering the foregoing authority, both from the Court and our sister circuits, we must conclude that § 32.03(k)'s prohibition on alcohol service at certain SOBs implicates the First Amendment.

The State, along with the International Municipal Lawyers Association and the Lake Highlands Area Improvement Association as amici curiae, also challenge the First Amendment's application to § 32.03(k) by arguing that § 32.03(k) merely affects the rights of *observers* of erotic dancers to consume alcoholic beverages and does not affect the rights of the dancers to engage in such expression or the rights of the Clubs to offer it. Section 32.03(k) does not implicate the First Amendment, they argue, because there is no "constitutional right to drink while watching nude dancing." *Sammy's of Mobile*, 140 F.3d at 999.

We disagree with this contention. The argument that § 32.03(k) merely regulates the actions of the Clubs' patrons overlooks the fact that it is the Clubs, not the patrons, that are denied the ability to *serve* alcohol, since the Clubs are SOBs operating in dry political subdivisions. *See id.* at 998–99 (indicating that patrons of the businesses at issue did not have a constitutional right to drink while

---

[4]The Eighth Circuit's consideration of a First Amendment challenge to an across-the-board prohibition of "adult uses" at establishments holding liquor licenses also suggests that such prohibitions implicate the First Amendment, since the court rejected the challenged based on *LaRue*. *See BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 607–08 (8th Cir. 2001).

watching nude dancing but nonetheless analyzing whether an ordinance prohibiting alcohol service violated the First Amendment). Also, while § 32.03(k) does not restrict the expressions in the erotic dancing offered by the Clubs, § 32.03(k) regulates the place or manner in which the erotic dancing can occur by not allowing the Clubs, which are operating as SOBs in dry political subdivisions, to obtain club permits allowing the service of alcohol. *See id.* at 998 ("In prohibiting nude dancing where liquor is sold, the ordinance restricts only the place or manner of nude dancing . . . ."). *Cf. City of Los Angeles v. Alameda Books*, 535 U.S. 425, 429, 434–35 (2002) (analyzing a regulation preventing two adult entertainment establishments from operating in the same building under the First Amendment time, place, and manner test). Section 32.03(k) implicates the First Amendment.

**(1)      Appropriate level of constitutional scrutiny**

Courts routinely apply intermediate scrutiny to alcohol regulations of SOBs, and we do so here. *See, e.g.*, *Odle*, 421 F.3d at 399; *Sammy's of Mobile*, 140 F.3d at 996 (commenting that alcohol regulations are content-neutral and should be analyzed under the intermediate scrutiny test); *see also Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 555 (5th Cir. 2006) ("Courts routinely apply *intermediate scrutiny* to government regulation of sexually oriented businesses . . . .").

The statute's predominate purpose determines the level of scrutiny. If § 32.03(k) is intended to suppress expressions contained in erotic dancing, then it is subject to strict scrutiny. *See Alameda Books*, 535 U.S. at 434 (plurality opinion). If § 32.03(k) has a purpose unrelated to the suppression of speech, then it is subject to intermediate scrutiny. *See id.* The district court concluded, notwithstanding the lack of a legislative record as to § 32.03(k)'s purpose, that the statute's predominant purpose was to curb the negative secondary effects "that result from the combination of alcohol and erotic dancing," and that, accordingly, the statute is not subject to strict scrutiny. The

10

court concluded that the State had demonstrated this predominant purpose by "asserting that § 32.03(k) furthers the State's interest in reducing the secondary effects that result from the combination of alcohol and erotic dancing, thereby protecting the welfare, health, temperance, and safety of the people of the State." The State asserted this purpose, not at a time contemporaneous with § 32.03(k)'s enactment, but during the proceedings before the district court.

The Clubs contend that the district court erred in applying intermediate scrutiny and argue that § 32.03(k) is subject to strict scrutiny because § 32.03(k)'s predominant purpose is to suppress the speech included in the sexually oriented performances offered by the Clubs. We disagree and conclude that § 32.03(k) is subject to intermediate scrutiny because its predominant purpose, as exhibited by its plain text and its place within the Texas Alcoholic Beverage Code, is unrelated to the suppression of speech.[5] Instead, § 32.03(k) is intended to regulate the service of alcohol. Intermediate scrutiny is proper if the statute is "justified without reference to the content of the regulated speech." *Hill v. Colorado*, 530 U.S. 703, 720 (2000). "[T]he fact that a statute *refers* to the content of expression does not necessarily make it content-based if it was enacted for a valid purpose *other* than suppressing the expression due to a disagreement with the message conveyed or a concern over the message's direct effect on those who are exposed to it." *Ranch House, Inc. v. Amerson*, 238 F.3d

---

[5]The State does not argue that rational basis scrutiny, as used in *LaRue*, applies. *See LaRue*, 409 U.S. at 118 (holding that California's conclusion that sexual performances should not be offered where liquor is sold "was not an irrational one"). Even if it had, we agree with the Third, Fourth, Sixth, Seventh, and Eleventh Circuits, which have all concluded that *44 Liquormart*'s reaffirmation of *LaRue*'s holding suggests that the *LaRue* regulations would have, and must have, survived *intermediate* scrutiny. *See supra* at 9–10. This circuit's relevant cases, though not dealing with alcohol regulations of SOBs, nonetheless suggest that intermediate scrutiny applies, since § 32.03(k) implicates the First Amendment. *See SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1273–74 (5th Cir. 1988) (stating that where the First Amendment is implicated, courts' review must be "more intense"); *see also Fantasy Ranch*, 459 F.3d at 555 (noting that intermediate scrutiny "routinely" applies to regulations of SOBs generally).

11

1273, 1278 (11th Cir. 2001).

On its face, § 32.03(k) concerns the regulation of alcohol, not the suppression of erotic speech. Section 32.03(k) regulates no aspect of any protected expressions exhibited in the erotic dancing offered at the Clubs.[6] Even with § 32.03(k) enforced, the Clubs could nonetheless offer erotic dancing, albeit not together with the service of alcohol. Section 32.03(k), however, references SOBs and applies to them, but that a statute references content does not alone mean that it is intended to suppress speech, even without a legislative record to suggest a purpose unrelated to speech. *See id.*; *see also Barnes*, 501 U.S. at 570 (plurality opinion) (holding that the purpose of a statute that prevented nude dancing was not to suppress protected speech despite no legislative history); *Sammy's of Mobile*, 140 F.3d at 998 (noting that an ordinance prohibiting alcohol service at a topless dancing establishment was not content-based notwithstanding the ordinance's "reference" to content).

Similar to the zoning ordinance in *Alameda Books*, § 32.03(k) is part of a "web" of alcohol regulations, the purpose of which is to protect the welfare and safety of the people of the state. *See* 535 U.S. at 447 (Kennedy, J., concurring in the judgment). This suggests that § 32.03(k) is more in the nature of a typical alcohol regulation "and less in the nature of a law suppressing speech." *Id.*; *see also Barnes*, 501 U.S. at 567–70 (plurality opinion) (discerning from an anti-nudity statute's "text and history" a substantial governmental purpose and concluding that this purpose was unrelated to the suppression of speech). The State also points out that § 32.03(k) regulates SOBs, which the

---

[6]This fact distinguishes the present case from *United States v. Playboy Entertainment, Inc.*, 529 U.S. 803 (2000), which the Clubs argue supports their contention that strict scrutiny applies. The statute challenged in *Playboy* was, by its terms, directed at sexually explicit television programs and "focuse[d] *only* on the content of the speech and the direct impact that speech has on its listeners." *Id.* at 811 (internal quotation omitted). Section 32.03(k) targets alcohol and is not "focuse[d] only" on the speech.

Texas legislature has determined "may be detrimental to the public health, safety, and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity." TEX. LOCAL GOV'T CODE § 243.001. This further demonstrates a purpose unrelated to the suppression of speech. Together, the text of § 32.03(k) and its statutory context convinces us that the statute's predominant purpose is with regulating the service of alcohol, not with suppressing the speech exhibited in the performances offered by the Clubs.

Nonetheless, the Clubs assert that because § 32.03(k) was enacted without a preamble that spells out a purpose and because the State did not introduce evidence of legislative history from which a predominant purpose can be inferred, this court must conclude that the predominant purpose is to suppress the protected speech. In support, the Clubs cite language in the *Alameda Books* plurality opinion, which indicates that determining if a statute is content-neutral "requires courts to verify that the 'predominate concerns' motivating the ordinance *were* with the secondary effects of adult [speech], and not with the content of adult [speech]." *See* 535 U.S. at 440–41 (plurality opinion) (emphasis added). According to the Clubs, the plurality's use of the past tense, together with this court's prior applications of intermediate scrutiny where legislative findings or the ordinance's preamble revealed a secondary effects purpose, requires courts to look to the legislative record or preamble, and not to other indicators contemporaneous with the enactment, to determine the statute's predominant purpose.

We disagree with the contention that a legislative record or statutory preamble is required to discern a content-neutral predominant purpose. The *Alameda Books* plurality's use of the past tense when describing the inquiry into a statute's predominant purpose does, as the Clubs suggest, support the notion that a statute's predominant purpose must be determined with reference to events

13

contemporaneous with the enactment. But the plurality did not specify that a purpose unrelated to suppressing speech can only be demonstrated with a specific type of indicator such as legislative findings or a statutory preamble. *See id.* at 440–41 (plurality opinion). Indeed, Justice Kennedy's *Alameda Books* concurrence states that "whether a statute is content neutral or content based is something that can be determined on the face of it." *See id.* at 448 (Kennedy, J., concurring in the judgment). And a plurality of the Court in *Barnes* held that a statute without legislative history advanced a substantial governmental interest unrelated to the suppression of speech where the statute's "text and history" revealed that it was not intended to suppress speech, but was instead concerned with morality. 501 U.S. at 568 (plurality opinion). Referring to a statute's text and to its statutory placement to discern its predominant purpose is consistent with the Court's First Amendment jurisprudence.

Also, referring to the text of § 32.03(k) and its statutory context to determine a statute's predominant purpose is not inconsistent with this court's prior cases. The Clubs are correct that this courts' previous cases have relied on a legislative record or a preamble to reveal a predominant purpose. *See, e.g.*, *Fantasy Ranch*, 459 F.3d at 556–57 (applying intermediate scrutiny to an ordinance concerning behavior restrictions at SOBs where the statute's stated purpose was to combat secondary effects); *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 174 (5th Cir. 2003) (applying intermediate scrutiny to zoning ordinances where the ordinances' preamble contained findings concerning secondary effects); *J & B Entm't*, 152 F.3d at 378 (concluding that a statute was content-neutral by looking to its preambulatory clause, which indicated a secondary effects purpose); *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1273 (5th Cir. 1988) (relying on the City of Houston's findings as to a secondary effects purpose to justify intermediate scrutiny). We disagree, however,

14

with the Clubs' reading of this court's cases as *requiring* a legislative record or a statutory preamble to justify content-neutral treatment, to the exclusion of other indicators contemporaneous to the statute's enactment, including the face of the statute itself, that equally support a predominant purpose unrelated to suppressing speech. As properly discerned from the plain text and statutory placement of § 32.03(k), its predominant purpose is unrelated to the suppression of speech. Section 32.03(k) thus is subject to intermediate scrutiny.[7]

**(2)     Applicable constitutional standard**

As noted, the *44 Liquormart* Court cited two First Amendment cases that represent separate, yet similar, tests for determining whether a statute violates the First Amendment. 517 U.S. at 515. Both cases are consistent with intermediate scrutiny. The first case cited, *Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976), outlines the standard for determining the constitutionality of adult entertainment zoning ordinances. It has subsequently been modified by *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), and *City of Los Angeles v. Alameda Books*, 535 U.S. 425 (2002). Under *Alameda Books*, which is applicable to ordinances restricting the time, place, and manner of adult entertainment, courts consider whether the ordinance (1) bans SOBs altogether; (2) is content-neutral or content-based; and (3) if content-neutral, serves a substantial governmental interest and leaves available "reasonable alternative avenues of communication." *Id.* at 433–34 (plurality opinion) (discussing *Renton*).

The second case cited, *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), outlines how courts analyze public indecency statutes. It employs the *O'Brien* test, which requires courts to

---

[7]Because we determine that the text of the statute and its statutory context justify intermediate scrutiny, we need not decide whether the district court was correct to rely solely on the State's post-enactment assertion of a secondary effects purpose as the basis for applying intermediate scrutiny.

determine if: (1) the regulation is within the constitutional power of the government; (2) it furthers an important governmental interest that is (3) unrelated to the suppression of speech; and (4) the incidental restrictions on speech are no greater than is essential to further the interest. *United States v. O'Brien*, 391 U.S. 367, 376–77 (1968); *see also Barnes*, 501 U.S. at 567.

The district court, following the Seventh Circuit's decision in *Ben's Bar*, examined § 32.03(k) with a constitutional test that is a hybrid of the adult entertainment zoning test used in *Alameda Books* and the public indecency test outlined in *O'Brien*. On appeal, neither party disputes the use of the hybrid test. We therefore need not decide whether to adopt it in circumstances such as the one here. We instead apply the hybrid test employed in *Ben's Bar* and used by the district court, noting that the result would be the same under either *Alameda Books* or *O'Brien*. *See LLEH, Inc. v. Wichita County*, 289 F.3d 358, 366 (5th Cir. 2002).

**(3)      Applying the constitutional standard**

Section 32.03(k) is constitutional if: (1) the State regulated pursuant to a legitimate governmental power; (2) the regulation does not completely prohibit adult entertainment; (3) the regulation is aimed not at the suppression of expression, but rather at combating negative secondary effects; and (4) the regulation is designed to serve a substantial governmental interest, is narrowly tailored, and reasonable alternative avenues of communication remain available, or, alternatively, the regulation furthers an important or substantial governmental interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest. *See Ben's Bar*, 316 F.3d at 722 (citing, *inter alia*, *O'Brien*, 391 U.S. at 377, *Renton*, 475 U.S. at 46, and *Alameda Books*, 535 U.S. at 434–36). Because the statute is reviewed for intermediate scrutiny, the State has the burden of justifying the challenged statute. *See J & B Entm't*, 152 F.3d at 370–71.

16

The Clubs focus their argument on the third and fourth prongs of the hybrid test, namely, whether § 32.03(k) targets secondary effects or protected speech and whether § 32.03(k) is designed to serve a substantial governmental interest and is narrowly tailored. As to the Clubs' first argument, § 32.03(k) does not target protected speech; instead, as discussed above, § 32.03(k)'s predominant purpose is to regulate alcohol service and is unrelated to the suppression of speech.

As to the second, we agree with the Clubs that the State has not justified a substantial governmental interest. The State's proffered substantial governmental interest is prohibiting the sale of alcohol in inappropriate locations and, thereby, protecting the "welfare, health, temperance, and safety of the people of the state" that would be harmed by the negative secondary effects flowing from the alcohol service/erotic dancing combination. *See* TEX. ALCO. BEV. CODE § 1.03. The State supported its substantial governmental interest at the summary judgment stage by (1) referencing, in a memorandum in support of its motion, information gleaned from judicial opinions and "common sense" and (2) by attaching various studies regarding the secondary effects of the alcohol/erotic dancing combination. The district court excluded *all* of the various studies as hearsay, and the State has not challenged this order on appeal. The district court nonetheless found that the State satisfied its burden by merely citing in its motion for summary judgment to judicial opinions and the discussions therein regarding the negative secondary effects of the alcohol/erotic dancing combination, when the judicial opinions cited were not in the record and were not relied on by the State prior to enactment.

The Clubs contend that allowing the State to justify its substantial interest solely with citations

17

in its summary judgment motion to cases in which substantial-interest findings exist was in error.[8] We agree because some evidence is required to justify a substantial governmental interest.

The inquiry into whether a statute furthers a substantial governmental interest is divided into two parts. *See Fantasy Ranch*, 459 F.3d at 558–59 (citing *Pap's A.M.*, 529 U.S. at 300). First, a substantial governmental interest must actually exist. *Id.* at 558. Second, the statute must further that interest. *Id.* at 559. Importantly, as this court recently held, challenges to both prongs of the substantial governmental interest inquiry "raise questions of evidence that [are] evaluate[d] using the standards described in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), as modified by *Alameda Books.*" *Fantasy Ranch*, 459 F.3d at 559 (citing *Pap's A.M.*, 529 U.S. at 297 (plurality opinion) ("[T]he evidentiary standard described in *Renton* controls here . . . .")); *see also Alameda Books*, 535 U.S. at 430 (plurality opinion) (noting that the Court granted certiorari to "clarify the standard for determining whether an ordinance serves a substantial governmental interest").

Under the *Renton* standard, as modified by *Alameda Books* and as applied in this circuit, the State must support its asserted substantial governmental interest with some evidence. *J&B Entm't*, 152 F.3d at 372–73 (considering a First Amendment challenge to a public nudity statute and stating that "*Renton* teaches us that the government must produce *some* evidence of adverse secondary effects produced by public nudity"). When considering First Amendment challenges to statutes or ordinances regulating SOBs, this court has consistently looked to *evidence* that supports the existence

---

[8]This judicial-opinion issue is similar to one avoided by the *Alameda Books* court. *See* 535 U.S. at 442 (plurality opinion) (avoiding the question of whether the city could rely on evidence in *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 828–29 (4th Cir. 1979), despite the respondents' contention that the city could not prove that it examined *Hart Book Stores* prior to the ordinance's enactment).

of a substantial governmental interest. *See id.*; *see also Fantasy Ranch*, 459 F.3d at 559 (noting that the City of Arlington's summary judgment evidence included a report by the City's expert, several studies concerning secondary effects, and data cited in numerous opinions); *BGHA, LLC v. City of Universal City*, 340 F.3d 295, 299 (5th Cir. 2003) (looking to affidavits from city personnel and minutes from city council meetings as evidence of a substantial governmental interest).

It is of course true, as the State points out, that the evidentiary burden for a State attempting to justify a substantial governmental interest is very light. *Alameda Books* requires only that the State "demonstrate a connection between the speech regulated by the [statute] and the secondary effects that motivated the adoption of the ordinance." 535 U.S. at 441 (plurality opinion); *see also id.* at 451 (Kennedy, J., concurring in the judgment) ("[V]ery little evidence is required" to show that "speech will be substantially undiminished, and that total secondary effects will be significantly reduced."). And the Court's cases "require only that municipalities rely upon evidence that is 'reasonably believed to be relevant' to the secondary effects that they seek to address." *Id.* at 442 (plurality opinion) (quoting *Pap's A.M.*, 529 U.S. at 296)). It is also true, as the State suggests, that the notion that the alcohol/erotic dancing combination is a combustible one is supported by common sense.

The State nonetheless "bears the burden of providing evidence that supports a link" between the combination of alcohol service and erotic dancing and negative secondary effects. *Id.* at 437 (plurality opinion); *see also J&B Entm't*, 152 F.3d at 372–73. Here, the record is completely devoid of any evidence that a secondary effects problem exists or that § 32.03(k) furthers that interest. The only actual evidence the State proffered in support of its substantial governmental interest was in the form of land-use studies by other cities on the negative secondary effects caused by SOBs. But, as noted above, these studies were excluded, and the State has not challenged the exclusion on appeal.

19

As such, there simply is *no evidence*, and the State has not met the minimal evidentiary burden placed upon it.

It is worth emphasizing that accepting citations in summary judgment motions to judicial opinions as alone sufficient to justify a substantial governmental interest would be inconsistent with *J & B Entertainment*'s requirement that "*some* evidence" be produced to justify a substantial governmental interest. *See* 152 F.3d at 371. The same is true of accepting "common sense" alone as sufficient to justify a substantial governmental interest. Also, such a holding would circumvent the burden-shifting "evidentiary analysis," applicable here, that the Court took great pains to outline in *City of Renton* and refine in *Alameda Books*. *See Alameda Books*, 535 U.S. at 438–39, 441 (plurality opinion) (stating that *Renton* contemplated "that courts would examine evidence concerning regulated speech and secondary effects" and providing that those challenging the constitutionality of an ordinance can shift the burden of production back to the government by introducing evidence to cast doubt on that introduced by the government).

The State argues that two Supreme Court cases, *Barnes* and *Pap's A.M.*, support the notion that citation to judicial opinions alone properly justifies its substantial interest in reducing the secondary effects of the alcohol/erotic dancing combination. *See Barnes*, 501 U.S. at 584–85 (Souter, J., concurring in the judgment) (analyzing whether a public nudity ban was justified by a substantial governmental interest and noting that "[o]ther reported cases" supported the secondary effects governmental interest); *Pap's A.M.*, 529 U.S. at 296–97 (plurality opinion) (noting that the city of Erie could rely on the "evidentiary foundations" in other judicial opinions to support its secondary effects governmental interest).

Neither case requires the result the State seeks. As for *Barnes*, this court has already

20

concluded, in *J & B Entertainment*, that *Barnes* "does not eliminate the government's burden of introducing sufficient evidence to justify the challenged ordinance."[9] *See* 152 F.3d at 371–72 (rejecting the argument that the local government need not offer any evidence to support a substantial governmental interest).

In *Pap's A.M.*, the plurality addressed a First Amendment challenge to a nude dancing ban and, in doing so, stated that "it was reasonable for Erie to conclude that such nude dancing was likely to produce the same secondary effects. And Erie could reasonably rely on the evidentiary foundation set forth in *Renton* and *American Mini Theatres* . . . ." *Pap's A.M.*, 529 U.S. at 297 (plurality opinion). At first, this statement seems to support the State's position. A closer look reveals, however, that the city council that enacted the nude dancing ban relied on *Renton* and *American Mini Theatres prior to* enacting the ban, not during litigation as the State has done here. *See id.* at 300 (plurality opinion) ("[T]he city council relied on this Court's opinions detailing the harmful secondary effects caused by establishments like [the plaintiff]."). *Pap's A.M.* thus arguably supports the notion that a government enacting a statute regulating SOBs need not develop an evidentiary record at trial supporting its substantial governmental interest when the record reviewed by the enacting body prior

---

[9]The State also asserts that language in *SDJ* and *J & B Entertainment* supports its contention that citation to cases is sufficient to justify a substantial governmental interest, even when there is no record evidence in support. *See SDJ*, 837 F.2d at 1274 ("Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities."); *see also J & B Entm't*, 152 F.3d at 371 ("[A] local government may place great weight upon[, *inter alia*,] opinions of courts from other jurisdictions."). While language in these cases references the propriety of using opinions of other jurisdictions, the State cannot circumvent *J & B Entertainment*'s specific requirement, repeated at least three times, that *evidence* must support the substantial governmental interest. *See J & B Entm't*, 152 F.3d at 371–72. Here, there is none. Additionally, in no identified case has a government successfully relied on citations to judicial opinions at the trial stage, in the absence of other evidence, to justify a substantial governmental interest.

to enactment included, *inter alia*, judicial opinions that demonstrated a substantial governmental interest. This notion is echoed in Fifth Circuit caselaw. *See, e.g.*, *J & B Entm't*, 152 F.3d at 372 (noting that the Fifth Circuit upholds statutes "where the government has introduced sufficient evidence to justify the ordinance on the basis of *preenactment legislative findings* or evidence adduced at trial" (emphasis added)).[10] *Pap's A.M.* does not, however, go so far as to stand for the proposition that a substantial governmental interest can be justified, as the State is attempting to do, solely by citing to judicial opinions in a summary judgment motion post-enactment, absent the enacting body's actual reliance on judicial opinions, studies, and the like. If it did, the *Alameda Books* plurality, two years after *Pap's A.M.*, would likely not have avoided the question of whether Los Angeles could rely on evidence in a judicial opinion, *Hart Book Stores, Inc. v. Edmisten*, 612 F.2d 821, 828–29 n.9 (4th Cir. 1979), despite the respondents' contention that Los Angeles could not prove that it examined *Hart Book Stores* prior to enactment. *See Alameda Books*, 535 U.S. at 442 (plurality opinion).

"[O]ne panel may not overrule the decision, right or wrong, of a prior panel in the absence of an intervening contrary or superseding decision by the court en banc or the Supreme Court." *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991). We do not view the four-justice *Pap's A.M.* plurality's invocation of the city council's reliance on judicial opinions as overruling the *J & B Entertainment* panel's requirement that the State produce some evidence to justify its substantial interest. We arrive at this conclusion for the reasons stated above and because a post-*Pap's A.M.* Supreme Court case, *Alameda Books*, re-emphasized the evidentiary analysis that

---

[10]Of course, here, so far as the record reveals, there is no evidence of a substantial governmental interest in the form of preenactment legislative findings or the like on which the legislature relied. There was only a post-enactment assertion and the text and context of § 32.03(k).

applies here. Moreover, a panel of this court in *J & B Entertainment* rejected a similar argument, based on *Barnes*, that no evidence was required to justify a substantial governmental interest. *See J & B Entm't*, 152 F.3d at 371–72. Bound by *J & B Entertainment*, we hold that the State has not justified its substantial governmental interest.[11] Accordingly, we need not address the parties' remaining First Amendment arguments.

### IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment insofar as it dismissed the Clubs' due process claim. We REVERSE the judgment insofar as it dismissed the Clubs' First Amendment claim and REMAND for further proceedings consistent with this opinion.

---

[11]We emphasize that our holding is a narrow one. Considering the light evidentiary burden borne by the State, the outcome could potentially have been different had the land-use studies excluded by the district court remained in the record.