# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00213-CV

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Gregg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**Texas Entertainment Association, Inc. and Karpod, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-07-004179, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## D I S S E N T I N G   O P I N I O N

Because I believe that the statutory scheme at issue in this case should have been reviewed using intermediate scrutiny rather than strict scrutiny and because I believe that the statute does not violate the First Amendment, I respectfully dissent from the result reached by the majority.

As mentioned in Justice Henson's opinion, section 47.052 of the business and commerce code provides as follows: "A fee is imposed on a sexually oriented business in an amount equal to $5 for each entry by each customer admitted to the business." Tex. Bus. & Com. Code Ann. § 47.052(a) (West Supp. 2008) (emphasis added). The code defines "sexually oriented business" as follows:

a nightclub, bar, restaurant, or similar commercial enterprise that:

(A) provides for an audience of two or more individuals live nude entertainment or live nude performances; and

(B) authorizes on-premises consumption of alcoholic beverages, regardless of whether the consumption of alcoholic beverages is under a license or permit issued under the Alcoholic Beverage Code.

*Id.* § 47.051(2) (West Supp. 2008); *see also id.* § 47.051(1) (West Supp. 2008) (defining "nude"). Accordingly, the code imposes a fee on businesses that provide nude erotic entertainment and permit the consumption of alcohol on the their premises. By requiring all the conditions to be satisfied before a fee may be imposed, the code necessarily exempts establishments that provide erotic entertainment but do not allow for the consumption of alcohol or that allow alcohol consumption but do not allow their erotic entertainers to perform fully nude. The code also requires that a large portion of the fee collected be given to the State's sexual assault program fund. *Id.* § 47.054 (West Supp. 2008).

**First Amendment**

The statute in question, by its terms, does not specifically impose restrictions on the type of erotic entertainment performers may engage in or that patrons may observe. In other words, the statute does not address the expressive nature of the entertainment at issue. Instead, the statute affects the ability of businesses to combine the entertainment and the consumption of alcohol. Although no specific limits on expression are imposed, the statute still has First Amendment implications because it affects the manner in which businesses may provide erotic expression. *See Illusions-Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 307 (5th Cir. 2007). In light of this, I would analyze the constitutionality of the statute by employing traditional First Amendment jurisprudence; however, I would note that while this type of regulation does have First Amendment implications, live erotic entertainment "falls only within the outer ambit of the *First Amendment's*

2

protection." *City of Erie v. Pap's A. M.*, 529 U.S. 277, 289 (2000); *see also Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 584 (1991) (Souter J., concurring) (distinguishing between societal interest in protecting erotic expression and greater interest in protecting "untrammeled political debate"); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975) (explaining that nude dancing at bars "involves only the barest minimum of protected expression"); *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 707 (7th Cir. 2003) (noting that nude dancing is only given diminished protection under First Amendment); *see also Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 554 (5th Cir. 2006) (explaining that although live erotic entertainment is protected by First Amendment, governments can regulate it).[1]

**Alcohol Prohibitions for Sexually Oriented Businesses**

As a preliminary matter, I would note that a state may, in an effort to combat secondary effects associated with sexually oriented businesses, entirely prohibit the consumption of alcohol within sexually oriented businesses. *See Ben's Bar*, 316 F.3d at 706, 728 (7th Cir. 2003) (upholding constitutionality of ordinance that prohibited consumption of alcohol within sexually oriented businesses); *see also 181 South Inc. v. Fischer*, 454 F.3d 228, 233-34 (3d Cir. 2006) (concluding that regulation prohibiting erotic expression at locations licensed to sell alcohol did not violate First Amendment). If a state may completely prohibit the consumption of alcohol within

---

[1] In her opinion, Justice Henson agrees that the type of expressive conduct at issue in this case only barely falls within the protections of the First Amendment. However, rather than concluding that the conduct's placement on the edge of protected speech subjects the behavior to less constitutional protection, she confusingly concludes that the type of expressive conduct at issue in this case warrants the highest judicial scrutiny, presumably higher than that afforded to behaviors more truly expressive in nature, to prevent unfair suppression.

sexually oriented businesses, it seems logical to assume that a state may also impose less exacting alcohol restrictions on sexually oriented businesses provided that the restriction is also designed to combat negative secondary effects. *Cf. Pap's A. M.*, 529 U.S. at 301 (upholding city ordinance that imposed restriction that was less onerous than complete ban on erotic dancing and noting that there may be more than one method for government to choose to address serious problems associated with sexually oriented businesses).

The statute at issue in this case imposes a fee on establishments providing erotic entertainment and allowing their customers to consume alcohol. There can be little doubt that a fee is less restrictive than an absolute ban,[2] and as discussed more thoroughly later, the statute was designed to address potential negative secondary effects arising from the pairing of erotic entertainment and alcohol consumption by providing revenue for the State's sexual assault program fund. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 511 (1996) (stating proposition that greater governmental powers include lessor ones); *cf. New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 717 (1981) (explaining that state's ability to ban sale of alcohol entirely encompasses lesser power to ban sale of alcohol at certain locations).[3] I can find no

---

[2] Regardless of the amount of the fee, the imposition of a fee for engaging in certain activities is less restrictive than banning the activity in its entirety because individuals have the option of engaging in the activity by paying the fee. Although businesses may challenge the amount of the fee as being excessive, those arguments are fundamentally different than challenging the State's authority to impose the fee at all.

[3] Justice Henson tries to dismiss the State's "greater power includes the lesser power" by relying on a hypothetical described in *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987). In that case, the Supreme Court noted that a state could prohibit people from shouting the word "fire" in crowded theaters without violating the First Amendment because the prohibition would fall within a state's power to protect the public safety. *Id.* at 837. However, the Court also theorized that a state

compelling distinction between statutes designed to curb potential negative secondary effects by prohibiting, in their entirety, the pairing of alcohol consumption and erotic entertainment and statutes designed to curb unwanted secondary effects by imposing a fee on establishments allowing the two activities that would render the later unconstitutional but the former constitutional. Consequently, I fail to see how the majority can conclude that the statute at issue violates the First Amendment.

**Intermediate Scrutiny Applies**

Once it has been determined that a statute regulates activity protected by the First Amendment, courts must then determine what level of scrutiny to employ when reviewing the statute. As a preliminary matter, I would note that courts often apply intermediate scrutiny to governmental regulations of sexually oriented businesses. *See Fantasy Ranch*, 459 F.3d at 555

---

could not adopt the ban but also allow individuals to violate the ban if they chose to contribute $100 to the state treasury. *Id.* The Court noted that the second situation would amount to a lesser restriction than a total ban but also concluded that the addition to the ban would be unrelated to the purpose of protecting the public safety and would, in fact, alter the purpose of the ban. *Id.* In effect, the Court reasoned that the imposition of the fee was improper because imposing the fee would not further the state's interest in encouraging public safety. In other words, the Court determined that "the condition substituted for the prohibition [would] utterly fail[] to further the end advanced as the justification for the prohibition." *Id.*

The fee at issue in this case is unlike the one described above because the fee in this case is designed to further the same interest that a total ban on erotic entertainment and alcohol consumption would accomplish: minimizing potential negative secondary effects resulting from the consumption of alcohol and the viewing of erotic entertainment. Accordingly, the fee at issue in this case is actually more similar to the other hypothetical described in *Nollan*, in which the Court theorized that because a state could refuse to issue a building permit in order to protect public's interest in a beach, the State could also legitimately grant the permit but impose limitations designed to protect the public's interest in that property. *Id.* at 836-37.

5

(5th Cir. 2006) (listing various instances in which courts have applied intermediate scrutiny); *see also 729, Inc. v. Kenton County Fiscal Court*, 515 F.3d 485, 504 (6th Cir. 2008) (explaining that regulations pertaining to sexually oriented businesses are reviewed under intermediate rather than strict scrutiny due to "the peculiar 'secondary effects' associated with adult businesses"). When determining whether to apply intermediate or strict scrutiny, courts look to the purpose of the regulation at issue. *Illusions*, 482 F.3d at 308. If the statute "is intended to suppress expressions contained in erotic dancing, then it is subject to strict scrutiny," but if the statute "has a purpose unrelated to the suppression of speech, then it is subject to intermediate scrutiny." *Id.*

Although the statute at issue in this case mentions "live nude entertainment" and "live nude performances," the statute imposes no direct limitation on the type of expression that may be exhibited through erotic entertainment. *Cf. id.* at 309 (explaining that fact that statute "references content" does not necessarily mean that statute is "intended to suppress speech, even without a legislative record to suggest a purpose unrelated to speech"). Moreover, it only imposes a fee if a sexually oriented business decides to pair erotic entertainment with the consumption of alcohol. In other words, a business may avoid any imposition of the fee described in the statute by not allowing its customers to consume alcohol. *See id.* (noting that fact that sexually oriented business could remove itself from reach of regulation by not allowing alcohol consumption weighs in favor of determination that regulation should be reviewed under intermediate scrutiny). Accordingly, the statute seems concerned with the regulation of alcohol or the regulation of the pairing of alcohol and erotic entertainment rather than the suppression of any specific erotic expression. *Cf. Ben's Bar*, 316 F.3d at 726 (explaining that regulation prohibiting consumption of alcohol within

6

sexually oriented business was "not a restriction on erotic expression, but a prohibition of nonexpressive conduct (i.e., serving and consuming alcohol) during the presentation of expressive conduct").

For these reasons, I believe that the statute has a purpose unrelated to the suppression of expression and is, therefore, subject to intermediate scrutiny. *Cf. Sammy's of Mobile Ltd. v. City of Mobile*, 140 F.3d 993, 996 (11th Cir. 1998) (noting that ordinances prohibiting sale or consumption of alcohol at sexually oriented business are content-neutral and should be analyzed under intermediate scrutiny).

This conclusion is also supported by the fact that courts have reviewed regulations pertaining to sexually oriented businesses and imposing more significant restrictions under intermediate scrutiny. For example, courts have employed intermediate scrutiny when reviewing regulations limiting the locations in which sexually oriented businesses may operate. *See, e.g.*, *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440 (2002) (plurality opinion) (applying intermediate scrutiny to ordinance that prohibited more than one sexually oriented business per building and did not contain a provision exempting preexisting businesses); *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 (1986) (utilizing intermediate-scrutiny test when reviewing regulation limiting the locations in which adult movie theaters may operate).

In addition, courts have also employed intermediate scrutiny when reviewing limitations placed on actual erotic expression. *See, e.g.*, *Fantasy Ranch*, 459 F.3d at 557 (applying intermediate scrutiny to ordinance imposing proximity limitations, which required performers to be six feet away from customers or to be separated from their customers by wall); *Hang-On, Inc. v. City of Arlington*, 65 F.3d 1248, 1254-55 (5th Cir. 1995) (applying intermediate scrutiny when

reviewing statute prohibiting contact between erotic entertainers and customers). Furthermore, the Supreme Court has applied intermediate scrutiny when reviewing the constitutionality of an ordinance prohibiting public nudity, which had the effect of requiring erotic entertainers to wear minimal attire. *Pap's A. M.*, 529 U.S. at 296-302.

Finally, courts have employed intermediate scrutiny to review complete bans on the consumption of alcohol within sexually oriented businesses. *See Ben's Bar*, 316 F.3d at 722. Similarly, intermediate scrutiny has been applied to a statute that completely prohibited the issuance or renewal of alcohol permits for sexually oriented businesses located inside dry political subdivisions. *Illusions*, 482 F.3d at 303, 307, 310; *see* Tex. Alco. Bev. Code Ann. § 32.03(k) (West 2007); *see also* Tex. Elec. Code Ann. § 501.021 (West Supp. 2008) (allowing voters to determine whether to allow sale of alcohol within political subdivision).

The statute at issue in this case does not require sexually oriented businesses to move from their current locations, imposes no direct limitation on the type of erotic expression entertainers may provide, and does not completely ban the consumption of alcohol within a sexually oriented business. Rather, the statute imposes a fee on a sexually oriented business only if it chooses to allow the consumption of alcohol on its premises. Nothing in the cases relied upon by either of the other two justices convinces me that a more exacting standard should be employed to review a statute that has a more modest impact on First Amendment expression than the regulations described above.

**The Statute Survives Intermediate Scrutiny**

Having determined that the statute in question in this case should be reviewed under intermediate scrutiny, I would then determine whether the statute may be upheld under that level of scrutiny. In the context at issue in this case, a regulation satisfies intermediate scrutiny if it was

8

issued "pursuant to a legitimate governmental power"; "does not completely prohibit adult entertainment"; "is aimed not at the suppression of expression, but rather at combating negative secondary effects"; and "is designed to" further a "substantial governmental interest and the restriction on expressive conduct is no greater than is essential in furtherance of that interest." *Illusions*, 482 F.3d at 311.

There is no dispute that the legislature has the authority to regulate both alcohol consumption and sexually oriented businesses. *Cf. Ben's Bar*, 316 F.3d at 722 (explaining that regulation of alcohol consumption falls within state's police powers). In addition, as described earlier, the statute in question does not completely ban erotic entertainment. *Cf. California v. LaRue*, 409 U.S. 109, 118-19 (1972) (upholding constitutionality of regulation that prohibited certain types of erotic expression in bars and noting that state did not ban the expression entirely, but merely prohibited it in establishments that allow for the consumption of alcohol). Consequently, the first two elements are met.

Regarding the third element, as described previously, nothing in the statute directly addresses any aspect of erotic expression; rather, the statute addresses the pairing of erotic expression with the consumption of alcohol. Moreover, rather than prohibiting any particular act of expression, the statute simply imposes a fee on establishments that desire to allow the consumption of alcohol on their premises and that provide erotic entertainment.

Furthermore, the statute attempts to address some of the potentially negative secondary effects from the pairing of alcohol and erotic expression by using a portion of the total fees collected to provide revenue for the State's sexual assault program fund. Additionally, the legislative history

9

for the statute demonstrates that the purpose of the statute was to provide funding for programs alleviating the impact of secondary effects. *See* Senate Research Ctr., Bill Analysis, Tex. H.B. 1751, 80th Leg., R.S. (2007) (stating that fee will be used to fund "programs that relate to sexual assault prevention, intervention, and research"); House Research Org., Bill Analysis, Tex. H.B. 1751, 80th Leg., R.S. (2007) (listing various sexual assault programs that money raised by fee could be used for). Although the effect of the fee on potential secondary effects may be more attenuated than a complete ban on alcohol consumption within businesses providing erotic entertainment would be, a state must be given a reasonable opportunity to experiment with solutions to serious problems affecting its populace. *See Pap's A. M.*, 529 U.S. at 301.

In light of the preceding, I would conclude that the statute is aimed at combating negative secondary effects and is not aimed at the suppression of expression. *Cf. Fantasy Ranch*, 459 F.3d at 557 (concluding that intermediate scrutiny was appropriate because the ordinance was "predominately targeted to the prevention of secondary effects, not to the suppression of symbolic expression"). For the reasons that follow, I would also conclude that the fourth element is satisfied.

To satisfy the "substantial interest" requirement of the final element, the State must present some evidence demonstrating a connection "between the combination of alcohol [consumption] and erotic dancing and negative secondary effects." *Illusions*, 482 F.3d at 312-13; *see Fantasy Ranch*, 459 F.3d at 561 (requiring only that regulation be supported by evidence that could reasonably be viewed as relevant to effects in question). However, the burden on the State is very light, *Illusions*, 482 F.3d at 312, and the State is not required to prove that its regulation is the only way to combat potential negative secondary effects, *see Alameda Books,* 535 U.S. at 437.

10

The link between sexually oriented businesses and negative secondary effects has been discussed in various cases, *Pap's A.M.*, 529 U.S. at 300 (noting that crime and other safety issues are caused by "presence of nude dancing establishments"), and courts have also identified a state's interest in combating these effects as a substantial interest, *see, e.g.*, *Barnes*, 501 U.S. at 583 (Souter, J., concurring) (concluding that states have substantial interest in preventing negative secondary effects associated with sexually oriented businesses). In fact, the Supreme Court has reasoned that governments are not required to obtain new evidence regarding negative secondary effects when passing new regulations for sexually oriented businesses and may instead rely on evidence previously discovered, including evidence summarized in prior cases. *Pap's A.M.*, 529 U.S. at 296-97. In addition, the legislature has specifically identified a link between sexually oriented businesses and negative secondary effects. In particular, the legislature has determined that it is appropriate to impose regulations on sexually oriented businesses that are not imposed on other businesses because "sexually oriented businesses may be detrimental to the public health, safety, and welfare by contributing to . . . the growth of criminal activity." Tex. Loc. Gov't Code Ann. § 243.001(a) (West 2005).

Although the link between sexually oriented businesses and negative secondary effects has been previously established, evidence was also presented at trial suggesting a link between sexually oriented businesses and the types of behavior that the sexual assault fund is designed to combat. *See Barnes*, 501 U.S. at 582 (Souter J., concurring) (explaining that when determining whether statute is constitutional, courts should focus on whether there is current governmental interest and not on whether interest was thoroughly articulated when regulation was issued); *Fantasy Ranch*,

459 F.3d at 560 (stating that governments may justify enactment of regulation with evidence presented at trial). In fact, the district court found that the State "presented persuasive trial evidence supporting a possible link between the business activity subject to the tax and the secondary effects addressed by the sexual assault program fund." Specifically, expert testimony was introduced stating that viewing erotic entertainment while consuming alcohol increases the likelihood that sexually assaultive behaviors might ensue. Moreover, various expert witnesses also stated that it was reasonable for legislators to conclude that there is a causal link between viewing erotic entertainment while consuming alcohol and sexually assaultive behavior.

For these reasons, I would conclude that the State has a substantial interest in combating negative secondary effects and that the statute at issue furthers that interest. *See Illusions*, 482 F.3d at 312 (explaining that courts must determine whether substantial interest exists and whether regulation facilitates that interest).

Regarding the restrictive component of the final element, as mentioned previously, the statute at issue imposes no affirmative ban on any expressive conduct. Instead, the statute imposes a fee on establishments providing erotic entertainment that also allow their patrons to consume alcohol. Nothing prohibits businesses from continuing to provide erotic entertainment and allow patrons to consume alcohol provided that the businesses pay the fee. Alternatively, businesses may continue to provide erotic entertainment without paying the fee if they stop allowing their customers to consume alcohol or if they require their performers to wear minimal clothing. *See Pap's A.M.*, 529 U.S. at 301 (commenting that requiring performers to wear minimal clothing has *de minimus* impact on erotic expression).

12

Given that the statute does not directly target any type of expressive conduct, that the statute provides multiple avenues in which businesses may continue providing erotic entertainment, and that courts have upheld other regulations actually limiting the type of erotic expression that may be conveyed, *see id.* at 284, 301 (upholding ordinance requiring dancers to wear minimal attire while engaged in erotic entertainment); *Hang On*, 65 F.3d at 1256-57 (stating that ordinance prohibiting contact between customers and erotic performer did not burden protected expression more than is essential to "interest in preventing prostitution, drug dealing, and assault"), I would conclude that the statute's restriction on expressive conduct is no greater than is essential.

Having determined that all four prongs of intermediate scrutiny were satisfied, I would hold that section 47.052 of the business and commerce code does not violate the First Amendment of the federal constitution.[4]

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed: June 5, 2009

---

[4] Because the district court concluded that the statute violated the First Amendment, it made no determination regarding the Association's other attacks on the statute. Having found that the statute does not violate the First Amendment, I would reverse the judgment of the district court and remand the case for consideration of the other issues raised in the case.