# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00213-CV

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellants**

**v.**

**Texas Entertainment Association, Inc. and Karpod, Inc., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. D-1-GN-07-004179, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## CONCURRING OPINION

Although I agree that strict scrutiny is the appropriate standard to apply in this case and concur in the decision to affirm the trial court's judgment, I write separately to address the issue raised by the parties concerning the use and relevance of post-enactment evidence in determining the statute's predominant purpose.

Our First Amendment analysis proceeds in three parts. *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434 (2002) (plurality op.) (citing *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 47-49, 51-54 (1986)). The first question, whether the challenged law imposes a complete ban or is instead a "time, place, and manner" regulation, *see id.*, is not in contention here, as the parties agree that the fee or tax at issue is the latter. The second question in the analysis is whether the restriction is content-neutral or content-based, *see id.*; the answer to this question determines what level of scrutiny should be applied, *see City of Erie v. Pap's A.M.*,

529 U.S. 277, 278 (2000) (plurality op.). A content-based regulation is considered presumptively invalid and is subject to strict scrutiny. *Simon & Schuster, Inc. v. Members of N. Y. State Crime Victims Bd.*, 502 U.S. 105, 115, 118 (1991); *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 230-31 (1987). Government regulation of speech or other expressive activity is content-neutral and subject only to intermediate scrutiny if it is adopted not "because of disagreement with the message it conveys," but for reasons unrelated to the content of the speech. *Hill v. Colorado*, 530 U.S. 703, 720 (2000) (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Even in cases when a regulation has an incidental effect on some speakers or messages but not others, however, it will be deemed content-neutral and reviewed under intermediate scrutiny if its predominant purpose was aimed at perceived harmful secondary effects of the speech, rather than at its content. *Alameda Books*, 535 U.S. at 434; *City of Renton*, 475 U.S. at 48-49. After determining the level of scrutiny, the third part of the analysis involves applying the appropriate constitutional standard to decide whether the regulation is narrowly tailored to promote a compelling governmental interest (strict scrutiny), *see Arkansas Writers' Project*, 481 U.S. at 231, or narrowly drawn to further a substantial governmental interest unrelated to the suppression of free speech (intermediate scrutiny), *see Turner Broad. Sys. v. Federal Commc'ns Comm'n*, 512 U.S. 622, 662 (1994).

I agree with Justice Henson that, in the present case, the level-of-scrutiny inquiry (*i.e.*, "question two") can properly be decided by considering the plain text of the statute at issue and its statutory context. *See, e.g.*, *Illusions - Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 310 (5th Cir. 2007) (holding that statute's predominant purpose could be determined by considering text and

statutory context). In addition to those factors, I believe it is also appropriate at this stage of the inquiry to look beyond whether the statute is content-based or content-neutral on its face and consider evidence regarding whether the statute's predominant purpose was to regulate speech or to address secondary effects. *See City of Renton*, 475 U.S. at 48-49. To the extent that Justice Henson's opinion suggests that secondary-effects analysis is or should be confined strictly to cases involving zoning regulations, I do not adopt that view. Given that, in determining the content neutrality of any statute under the First Amendment, "[t]he government's purpose is the controlling consideration," *Ward*, 491 U.S. at 791, it would be unwise to ignore evidence regarding whether the government's actual purpose was to combat negative secondary effects. Accordingly, I see no reason to analyze and decide cases in which protected speech is regulated through imposition of a tax any differently from cases in which it is regulated by a zoning restriction or other means.

As the Eleventh Circuit has observed, while the Supreme Court has stated that zoning ordinances and public-nudity ordinances should be reviewed under distinct standards, "the Court also has sometimes collapsed the two categories into a single, overarching category of regulatory action targeting the negative 'secondary effects' of non-obscene adult entertainment and drawn conclusions about this single category." *Peek-a-Boo Lounge of Bradentown, Inc. v. Manatee City*, 337 F.3d 1251, 1255 (11th Cir. 2003). "Additionally, the Court has occasionally borrowed specific doctrines developed in one category of case to apply to the other." *Id.* at 1255-56 (citing *Alameda Books*, 535 U.S. at 434 (plurality op.) (relying on Court's holding in *Pap's A.M.*, a case involving public-nudity ordinance, to explicate evidentiary showing necessary to sustain adult-entertainment zoning ordinance); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 583-84 (1991) (Souter, J.,

3

concurring) (relying on evidentiary standard described in *Renton*, a zoning case, to explicate evidentiary showing necessary to sustain public-nudity ordinance)).[1]  Therefore, I would hold that the *Renton* test may be applied here and that question two of that test may be decided by considering evidence relevant to the issue of whether the legislature's predominant purpose in enacting the statute was to address secondary effects.

In the present case, the trial court made several written fact findings relating to the absence of evidence that the statute's predominant purpose was to combat secondary effects of combining nude dancing and alcohol:

> The author of HB 1751, State Representative Ellen Cohen, testified before the House Ways & Means Committee that she claimed no link between sexual assault and the businesses responsible for the fees to be paid.
>
> The House Research Organization's Bill Analysis claimed no link between sexual assault and the business responsible for the fees to be paid.

---

[1]  *See also City of Erie v. Pap's A.M.*, 529 U.S. 277, 281-82 (2000) (plurality op.) (applying *Renton*'s secondary-effects doctrine to justify non-zoning restrictions); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citing *Renton* for proposition that "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others" in non-zoning context).  The federal courts of appeals have followed suit.  *See, e.g.*, *Fantasy Ranch Inc. v. City of Arlington*, 459 F.3d 546, 556 (5th Cir. 2006) (holding that city ordinance requiring sexually oriented businesses to enforce proximity provisions between nude dancers and patrons was content-neutral because "the ordinance's predominate concern is for secondary effects"); *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1013 (9th Cir. 2004) (equating second question of *Renton* test to determination of whether statute was designed to combat secondary effects of adult entertainment industry); *G.M. Enters., Inc. v. Town of St. Joseph*, 350 F.3d 631, 637 (7th Cir. 2003) (focusing level-of-scrutiny inquiry solely on whether ordinances targeted secondary effects of sexually oriented businesses and opting not to decide whether ordinances were content-based or content-neutral).

4

There is no evidence that the Legislature actually considered or saw any studies claiming a link between sexual assault and the sexually oriented businesses that are responsible for the SOB Tax.

Victoria Camp's testimony indicated that materials supporting the existence of such links were made available to certain legislators, but no evidence showed that any legislator had actually considered or even seen those materials.

There is no evidence that studies about sexually oriented businesses were created, consulted, or reviewed by the Legislature prior to enacting HB 1751.

The State does not challenge those findings in this appeal. The trial court also made the following conclusion of law:

If reliance by the Legislature on some pre-enactment evidence of links between secondary effects and protected speech is a constitutional requirement (as is suggested, not expressly held, by Supreme Court case law), the SOB Tax must be held unconstitutional because no evidence indicating that the Legislature actually considered any evidence of such links was presented at trial.

The State argues that, in making the foregoing findings and conclusion, the trial court created a "false distinction" between pre- and post-enactment evidence, which led it to determine that the State's "evidence of a link between the combination of alcohol and nude dancing and sexual assault" was insufficient. Relying on Justice Souter's concurring opinion in *Barnes* and two Fifth Circuit decisions, *see Fantasy Ranch*, 459 F.3d at 560; *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 175 (5th Cir. 2003), the State argues that the Supreme Court has never required the government to produce "pre-enactment evidence" of legislative purpose in order to meet its burden of showing that a statute is content-neutral. The State's reliance on these cases is inapposite.

5

While Justice Souter did urge that "the appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional," *see id.* at 582, his comments were made in the context of a discussion of question three of the *Renton* analysis—whether the government satisfied the intermediate-scrutiny standard by producing sufficient evidence of a link between the challenged regulation and the asserted interest in combating secondary effects. Likewise, the statements in the cited Fifth Circuit cases regarding the use of post-enactment evidence were made in the context of question-three discussions.[2] But inquiring into whether a statute's *purpose* was to address secondary effects is wholly distinct from inquiring into whether the statute can be *justified* on the basis that it actually furthers an important or substantial governmental interest in combating negative secondary effects; the former determines the level of scrutiny to be applied, while the latter determines whether the statute passes constitutional muster under the applicable standard. Although I agree that post-enactment evidence may be considered in answering question three, and is often essential to that inquiry, it is far from clear that post-enactment evidence—even evidence directly relevant to purpose—may properly be considered in answering question two. *See, e.g.*, *Illusions*, 482 F.3d at 310 n.7 (declining to address question of whether district court erred in relying on state's post-enactment assertion of secondary-

---

[2] *See Fantasy Ranch*, 459 F.3d at 560-61 (discussing post-enactment evidence in determining whether ordinance furthered important or substantial government interest); *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 175 (5th Cir. 2003) (holding same and noting that question-two stage is not appropriate point to require legislature "to show evidence of negative secondary effects and of the new regulations' efficacy" because "[d]isputes over the effectiveness of the proposed regulations are properly reserved for the final prong of the *Renton* analysis").

6

effects purpose as basis for applying intermediate scrutiny, having decided that statute was content-neutral based on its plain text and statutory context); *White River Amusement Pub, Inc. v. Town of Hartford*, 481 F.3d 163, 171-72 (2d Cir. 2007) (concluding that *Renton* permits consideration only of pre-enactment evidence at question-two stage); *Dream Palace*, 384 F.3d at 1013-14 (same); *Peek-A-Boo Lounge*, 337 F.3d at 1268 & n.16 (same); *SOB, Inc. v. County of Benton*, 317 F.3d 856, 862 (8th Cir. 2003) (same); *D.H.L. Assocs., Inc. v. O'Gorman*, 199 F.3d 50, 57-58 (1st Cir. 1999) (same); *Z.J. Gifts D-2, L.L.C. v. City of Aurora*, 136 F.3d 683, 690 (10th Cir. 1998) (same).

Irrespective of whether courts may properly consider post-enactment evidence of purpose in answering question two, however, all of the State's post-enactment evidence in this case was relevant to the issue of whether the statute can be justified (question three), not its purpose (question two). As the trial court explained in its detailed findings of fact, the record in this case does not contain evidence—either pre- or post-enactment—that the legislature's predominant purpose in enacting the statute was to combat perceived negative secondary effects of combining alcohol and nude dancing. Thus, the State's argument that the trial court created a false distinction between pre- and post-enactment evidence is unavailing, because no evidence was produced showing that the legislature's purpose was aimed at secondary effects.

In sum, I agree with Justice Henson that the text and context of the statute show that it is a content-based restriction. Therefore, in the absence of any evidence that the legislature's predominant purpose was to address secondary effects, the statute may not be deemed content-neutral and must be reviewed under strict scrutiny, *see City of Renton*, 475 U.S. at 48-49, which the State has conceded it cannot meet.

7

I join the "Sovereign Immunity" and "Attorneys' Fees" sections of Justice Henson's opinion.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Henson

Filed:   June 5, 2009