# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30292

United States Court of Appeals
Fifth Circuit

**FILED**

September 20, 2018

Lyle W. Cayce
Clerk

JANE DOE I; JANE DOE II; JANE DOE III,

Plaintiffs - Appellees

v.

JEFF LANDRY, Attorney General for the State of Louisiana,

Intervenor - Appellant

JUANA MARINE-LOMBARD, in her official capacity as Commissioner, Louisiana Office of Alcohol and Tobacco Control,

Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, CLEMENT, and SOUTHWICK, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

In 2016, Louisiana amended two statutes to require that entertainers on premises licensed to serve alcohol and whose breasts or buttocks are exposed to view be 21 years of age or older.  Three erotic dancers aged 18, 19, and 20 filed a complaint against the state official responsible for the Act's enforcement, claiming the Act violated various provisions of the United States

No. 17-30292

and Louisiana Constitutions. The district court concluded that the plaintiffs were likely to succeed on the merits of their claims that the Act is unconstitutionally overbroad and vague. It left other issues for later resolution but issued a preliminary statewide injunction barring enforcement of the Act. The State brought this interlocutory appeal. We disagree with some of the district court's reasoning as to whether the Act was narrowly tailored, but we agree that the statute is vague. We AFFIRM.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit involves Act No. 395 from the 2016 regular session of the Louisiana legislature. The Act identically amended two Louisiana statutes that regulate activities on premises licensed to serve alcohol, adding a requirement that certain performers be at least 21 years old:

> Subject to the provisions of Subsection D of this Section, entertainers whose breasts or buttocks are exposed to view shall perform only upon a stage at least eighteen inches above the immediate floor level and removed at least three feet from the nearest patron *and shall be twenty-one years of age or older*.

LA. REV. STAT. §§ 26:90(E), 26:286(E) (2016) (emphasis added). The only significant difference between the two statutes is that Section 26:90 regulates those who sell or serve typical alcoholic beverages, while Section 26:286 regulates those who sell or serve beverages of low-alcoholic content. *Compare* § 26:90(A)(1)(a), *with* § 26:286(A)(1)(a). Even though the pre-2016 version of Subsection E did not refer to age at all, the parties agree that erotic dancers previously had to be at least 18 years old. *See* §§ 26:90(E), 26:286(E) (2010).

We will give more detail later, but for now we simply point out that neither before nor after the Act became effective were erotic dancers permitted to be completely nude. That is because another statutory provision limits what may be "exposed to view;" a dancer must at least be wearing, to use the terms

2

of art, G-strings and pasties. §§ 26:90(D)(3); 26:286(D)(3). One of the issues in the case is how much covering is needed beyond that minimum for performers who are under age 21.

The Act became effective August 1, 2016. The Louisiana Office of Alcohol and Tobacco Control ("ATC") soon began enforcing the Act's age requirement throughout Louisiana, except in New Orleans. It planned to begin enforcing the age requirement there on October 1, 2016.

In September 2016, three female erotic dancers who were at least 18 years old but not yet 21 filed a complaint in the United States District Court for the Eastern District of Louisiana against Juana Marine-Lombard in her official capacity as Commissioner of the ATC. The plaintiffs sought injunctive and declaratory relief under 42 U.S.C. §§ 1983 and 1988, claiming that the Act facially violated the First and Fourteenth Amendments to the United States Constitution and Article I, Sections 2, 3, and 7 of the Louisiana Constitution.

Plaintiff Jane Doe I was 20 years old when the complaint was filed. She is a resident of New Orleans and is employed as an erotic dancer in that city. Jane Doe I alleged she began dancing at age 18, "highly values the scheduling control her vocation allows her, and . . . enjoys expressing herself through dancing." In addition, she contended that as an erotic dancer, she earns enough money to meet her financial obligations and to save for her retirement, which she was unable to do prior to working as an erotic dancer. Jane Doe I asserted that in October 2016, when the Act was to be enforced in New Orleans, she would no longer be permitted to be employed as an erotic dancer.

Jane Doe II was 18 years old when the complaint was filed. She is a resident of Baton Rouge and a student at Louisiana State University. She claimed to be entirely independent, as both of her parents died of cancer. Jane Doe II began working as an erotic dancer in June 2016 "in order to finance her college education and living expenses." She desired "to save enough money

No. 17-30292

over the summer through her work as a dancer so that at the start of the school semester, she could concentrate fully on her studies."

Jane Doe II stopped performing as an erotic dancer as of the Act's effective date. She began working as a "shot girl," which is a server that circulates throughout the establishment and offers patrons shots of alcohol for purchase. She contended that her income decreased by more than fifty percent when she stopped being a dancer and began working as a shot girl. Jane Doe II also argued that because of the Act she lost the ability to express herself through erotic dance.

Jane Doe III was 19 years old when the complaint was filed. She is a resident of New Orleans and began working as an erotic dancer in September 2015. She was employed as an erotic dancer in Baton Rouge from January 2016 until the Act went into effect. Jane Doe III contended that on the date the Act became effective in Louisiana, she was forced to stop working as an erotic dancer and began working as a shot girl at the club where she formerly danced. Her income also allegedly dropped by more than half.

The plaintiffs moved for a preliminary injunction, requesting that the district court enjoin Commissioner Marine-Lombard from enforcing the Act. On September 30, 2016, the district court entered a temporary restraining order prohibiting Commissioner Marine-Lombard from enforcing the Act anywhere within the state of Louisiana.

On November 3, 2016, Jeff Landry intervened in the lawsuit in his official capacity as Attorney General for the state of Louisiana. Commissioner Marine-Lombard and Attorney General Landry (collectively, "the State") then filed separate responses to the plaintiffs' motion for preliminary injunction. The district court treated the separate responses as a single opposition because they addressed separate arguments that the plaintiffs had asserted in their motion.

No. 17-30292

The district court determined that Act 395 was overbroad and vague under the federal Constitution. The remainder of the plaintiffs' claims were left for later resolution. The court enjoined the enforcement of the Act. The State timely brought an interlocutory appeal, citing 28 U.S.C. § 1292(a)(1), which allows appeals from the grant of injunctions. The court later instructed its clerk to stay and administratively close the case pending the appeal.

DISCUSSION

We review a district court's decision to grant a preliminary injunction for abuse of discretion, but we review its findings of fact for clear error and its conclusions of law *de novo*. *Jefferson Cmty. Health Care Centers, Inc. v. Jefferson Par. Gov't*, 849 F.3d 615, 624 (5th Cir. 2017). Plaintiffs are entitled to a preliminary injunction if they show (1) a substantial likelihood that they will prevail on the merits of their claims, (2) a substantial threat that they will suffer an irreparable injury if the injunction is not granted, (3) their threatened injury outweighs the threatened harm to the State, and (4) the public interest will not be disserved if the preliminary injunction is granted. *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 195–96 (5th Cir. 2003).

Much of what follows addresses the likelihood of plaintiffs' success on the merits. After reviewing the individual claims, we will discuss the remaining elements that must be shown for an injunction.

This case comes to us with a few uncontested premises. The parties do not dispute that "nude dancing is not without its First Amendment protections from official regulation." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 66 (1981). "[N]ude dancing of the type at issue here is expressive conduct, although . . . it falls only within the outer ambit of the First Amendment's protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality opinion). It is also uncontested that, prior to the Act, individuals age 18-20

5

could perform as entertainers with their breasts or buttocks exposed to view at alcohol-licensed establishments in Louisiana.  Finally, it is undisputed that in Louisiana some sexually-oriented businesses are licensed to serve alcohol and others are not; the rules we are discussing apply to those serving alcohol.

The disputes are these.  The State contends that the plaintiffs have not shown a substantial likelihood of success on the merits of their overbreadth claim because the district court failed to find real and substantial overbreadth and failed to consider the State's limiting construction.  The State further argues that the plaintiffs cannot show a substantial likelihood of success on their vagueness claim because no plaintiff has standing to bring a facial vagueness challenge and because the Act's text plainly reveals what conduct is prohibited by the Act.  The plaintiffs assert that strict scrutiny should apply and that the Act should be enjoined on free expression or equal protection grounds if it is not enjoined because of overbreadth or vagueness.

The first issue we discuss, because it affects much of what follows, is whether strict or intermediate scrutiny applies to these claims.

## I.  Level of scrutiny

The district court determined that the Act was not a content-based restriction.  Accordingly, it applied intermediate scrutiny as opposed to the almost certainly invalidating strict scrutiny.  We analyze whether that was correct.

"The statute's predominant purpose determines the level of scrutiny." *Illusions-Dallas Private Club, Inc. v. Steen*, 482 F.3d 299, 308 (5th Cir. 2007). Intermediate scrutiny is "routinely" applied to regulation of alcohol at sexually-oriented businesses.  *Id.* at 307.  The district court determined that the predominant purpose of the Act was similar to that of other "alcohol regulations aimed at combating the harmful secondary effects of nude

dancing." The Act had no legislative preamble to explain its purpose, but such a preamble or legislative history is not required to support a content-neutral purpose. *See id.* at 310. The district court relied on our holding in *Illusions-Dallas* that a predominant purpose for legislation regulating alcohol can properly be identified by the statute's text and its placement within a code of statutes regulating alcohol. *See id.* at 308.

Another "routine" and identical holding applicable to similar legislation as that in *Illusions-Dallas* was in *Baby Dolls Topless Saloons, Inc. v. City of Dallas*, 295 F.3d 471, 484–85 (5th Cir. 2002). We held there that the burden on expression is incidental to the content-neutral exercise of authority to regulate the sale of alcohol. *Id.*

The plaintiffs quote statements from two state legislators to support their view that this was a content-based restriction based on a view of morally acceptable conduct. The views of individual legislators as to their special interest in a legislative enactment, however, do not override our clear caselaw such as *Illusion-Dallas* that a regulation such as this is generally not content based and is entitled to intermediate scrutiny. That is the scrutiny we apply.

*II. Narrow tailoring/facial overbreadth*

We need to be careful with terms. A statute regulating conduct with incidental effects on speech can be a reasonable restriction if, among other things, it is narrowly tailored to serve substantial governmental interests. *Hill v. Colorado*, 530 U.S. 703, 725–26 (2000). Such caselaw applies to free-expression claims "when 'speech' and 'nonspeech' elements are combined in the same course of conduct, [and] a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376 (1968). These requirements are met "so long as the neutral regulation promotes a

substantial government interest that would be achieved less effectively absent the regulation." *United States v. Albertini*, 472 U.S. 675, 689 (1985).

A different concept is this: "the overbreadth doctrine enables litigants 'to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" *Hill*, 530 U.S. at 731–32 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). Further, "particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615. Obviously, both areas of First Amendment law are concerned with statutes that regulate speech more than necessary. The concepts are distinct, though.

The district court here ruled that the Act failed the fourth factor of a time, place, and manner precedent. *See O'Brien*, 391 U.S. at 377. We place *O'Brien* in that category because the Supreme Court itself did, describing the four-factor test announced in *O'Brien* as "little, if any, different from the standard applied to time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 298 (1984). The *O'Brien* test sustains a statute's validity:

> [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377. It was the fourth factor — does a restriction governing conduct have an incidental restriction on speech that is greater than necessary — that the district court here held was not satisfied. Its analysis of that factor was expressed as "overbreadth." Labeling wider-than-necessary

No. 17-30292

tailoring as overbreadth is grammatically reasonable but doctrinally conflating. It risks merging *O'Brien* with the different doctrine of overbreadth. To be clear, we find no error in the terminology *per se*, but we will be alert here to the application of the appropriate caselaw.

A more common use of the term "overbreadth" in First Amendment analysis allows plaintiffs whose rights are not violated to show that "a 'substantial number' of [the law's] applications [to other individuals] are unconstitutional, 'judged in relation to the statute's plainly legitimate sweep.'" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (quoting *New York v. Ferber*, 458 U.S. 747, 769–71 (1982)). As we have explained, "the rationale of the overbreadth doctrine is to protect the expressive rights of third parties who are not before the court." *United States v. Hicks*, 980 F.2d 963, 969 (5th Cir. 1992) (emphasis omitted).

We start with a discussion of this special version of the standards for judging time, place, and manner restrictions. The district court stated that the parties disagreed as to whether *O'Brien* should be applied specifically or whether a more relevant test was a hybrid[1] employed in *Illusions-Dallas*, 482 F.3d at 311, in which the parties agreed to a mix of factors. The district court applied *O'Brien*, concluding the differences between the tests did not affect the outcome. On appeal, plaintiffs accept *O'Brien* while the State makes no substantial objection. We therefore apply it too.

---

[1] The principal difference is that the hybrid test looks to whether the regulation would completely eliminate adult entertainment: "(1) the State regulated pursuant to a legitimate governmental power; (2) the regulation does not completely prohibit adult entertainment; (3) the regulation is aimed not at the suppression of expression, but rather at combating negative secondary effects; and (4) the regulation is designed to serve a substantial governmental interest, is narrowly tailored, and reasonable alternative avenues of communication remain available, or, alternatively, the regulation furthers an important or substantial governmental interest." *Illusions-Dallas*, 482 F.3d at 311.

9

No. 17-30292

### A.  O'Brien *factors one and two*

The plaintiffs accept that the Act was within the constitutional authority of the state government.  That concession means the first of the *O'Brien* factors is satisfied, and we therefore need not discuss it.

As to the governmental interest, the district court held that the Act is intended to regulate the secondary effects of erotic dancing, which is a substantial governmental interest.  Harmful secondary effects can include the "impacts on public health, safety, and welfare." *Pap's A.M.*, 529 U.S. at 291. The evidentiary burden to support the governmental interest is light. *Illusions-Dallas*, 482 F.3d at 313.  The State has the burden of providing evidence that it "reasonably believed to be relevant" to the question of secondary effects. *Id.* (quoting *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 442 (2002) (plurality opinion)).  It must show a connection between the actions being regulated — erotic dancing by 18, 19, and 20-year-olds and alcohol consumption — and the claimed secondary effects.

The principal secondary effects asserted by the State are human trafficking and prostitution.  Also discussed are substance abuse by, and assaults on, the dancers.  The State provided a report from a statewide investigation conducted by the state Bureau of Alcohol, Tobacco, and Firearms, with little isolation of the 18–20-year-old age group in its study.  The report did describe one individual who went from being a 19-year-old erotic dancer, to being a prostitute, to being killed by her pimp.  It also provided evidence compiled by the City of New Orleans on secondary effects of erotic dancing.

Though there is significant dispute as to whether the Louisiana legislature considered any of this information, we have allowed such regulations to be justified by evidence that may not have been presented to the enacting officials and was only produced at the time of trial. *See J & B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 371–72 (5th Cir. 1998).  The plaintiffs

10

argue that this misreads *J & B*, but we stated in that case that "Justice Souter's concurrence in *Barnes* . . . allows a local government to justify a challenged ordinance based on evidence developed either prior to enactment or adduced at trial." *Id.* at 372 (citing *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991) (Souter, J., concurring)).

We agree with the district court that the State upheld its obligation to introduce some evidence that it "reasonably believed to be relevant" on the question of secondary effects. *See Illusions-Dallas*, 482 F.3d at 313. The Act must also further that governmental interest of reducing human trafficking. The State need not demonstrate through empirical data, though, that its regulation will reduce such trafficking. "Such a requirement would go too far in undermining [the] settled position that municipalities must be given a reasonable opportunity to experiment with solutions to address the secondary effects of protected speech." *Baby Dolls*, 295 F.3d at 481 (quoting *Alameda Books, Inc.*, 535 U.S. at 439). The district court relied on the failure of the plaintiffs to provide "actual and convincing evidence" that the enactment will not have any positive effect on the identified harms. Our precedent, though, requires a reasonable belief that there is a link between the regulation and the curbing of the identified secondary effects. *Id.* Thus, we proceed beyond the absence of evidence from the plaintiffs. We find that the evidence presented by the state to demonstrate the existence of secondary effects is also sufficient to show a reasonable belief that there is a link between the Act and curbing the identified secondary effects of human trafficking and prostitution.

B. O'Brien *factor three*

The third *O'Brien* factor requires that the regulation be unrelated to the suppression of free speech or expression. The district court did not analyze that factor separately. Instead it relied on its earlier analysis, which we also have discussed, and accepted that intermediate scrutiny applied because the

No. 17-30292

Act was content-neutral. The plaintiffs make a brief argument to the contrary on appeal, but we find no error.

### C.  O'Brien *factor four*

We now come to the factor that the district court held the Act failed, namely, that "the incidental restriction on alleged First Amendment freedoms [be] no greater than is essential to the furtherance of that interest." *O'Brien*, 391 U.S. at 377. The district court held the Act was "overbroad" because it might preclude individuals eighteen to twenty-years-old "from participating in theater or similar artistic productions if such participation entails nudity." It stated that "there is little doubt that Act No. 395 sweeps up a fair amount of constitutionally protected speech."

The *O'Brien* phrase "no greater than necessary" hints of the different and difficult standard of "least restrictive means," but the Supreme Court has made clear the two are not equivalent: "Lest any confusion on the point remain, we reaffirm today that a regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). The Supreme Court went further in describing the needed focus:

> Rather, the requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." . . . So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.

*Id.* at 799–800 (first ellipsis in original) (quoting *Albertini*, 472 U.S. at 689). We apply to *O'Brien* this guidance about what "no greater than necessary" means for time, place, and manner legal standards because, as we stated

12

No. 17-30292

above, the Court has held that *O'Brien* is a variant of those standards. *See Community for Creative Non-Violence*, 468 U.S. at 298.[2]

At times this court has separately discussed both the *O'Brien* four-factor test and the standard for overbreadth when analyzing a regulation. *E.g.*, *Hang On, Inc. v. City of Arlington*, 65 F.3d 1248, 1254–55 (5th Cir. 1995). We rejected the argument that a ban on patrons touching nude dancers (which rarely would invoke a *patron's* speech rights) was *overbroad*, in part because the "First Amendment 'does not guarantee the right to [engage in protected expression] at all times and places or in any manner that may be desired.'" *Id.* at 1254 (inserted phrase in original) (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981)). "[C]ontent-neutral regulations of time, place, or manner are permissible where the regulations satisfy the four-part test announced in [*O'Brien*]." *Id.* (emphasis omitted). This suggests that satisfying *O'Brien*, when that is the appropriate test, will usually obviate the need to analyze the different requirement that the "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *See Ferber*, 458 U.S. at 770 (quoting *Broadrick*, 413 U.S. at 615).

We apply these principles to our facts. The district court properly applied *O'Brien*'s first three factors to the Act. The court also discussed the relevant analysis of whether the government's interest "would be achieved less effectively absent the regulation." *See Albertini*, 472 U.S. at 689. The district

---

[2] An insightful summary of the different considerations for the fourth factor articulated in *Rock Against Racism* and in other caselaw is this:

> When the government could adopt a narrower regulation that would significantly reduce the negative impact on speech without substantially interfering with its legislative goals, the government should be forced to adopt the narrower regulation.

1 *Smolla & Nimmer on Freedom of Speech* § 9:17 (2018).

court then shifted to a discussion of the substantial-overbreadth issue of whether "a substantial number of [a statute's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *See United States v. Stevens,* 559 U.S. 460, 473 (2010) (citation omitted). The court continued by discussing *Broadrick*, *Hicks*, and other overbreadth cases.

We are engaged in a *de novo* review, and we see no reason to question the district court's conclusions just because some of the caselaw may have been from a slightly different doctrine. Substantial overbreadth is certainly a related concept to the fourth *O'Brien* factor. The district court's primary basis for finding the statute applied to far more expression than was essential is that it did not exclude what the court called "mainstream" expressions of nudity. These were performances at theaters, ballets, or other art venues not usually associated with eroticism. That mainstream speech is what the district court determined was improperly swept up within the reach of this Act.

Limiting constructions may be considered if the regulation "is 'readily susceptible' to such a construction." *Stevens*, 559 U.S. at 481 (quoting *Reno v. American Civil Liberties Union*, 521 U.S. 844, 884 (1997)). The State presented to the district court an affidavit from Commissioner Marine-Lombard who stated that the Act "does not apply to venues such as theatres, ballets, or other mainstream performance arts venues." The court refused to consider this narrowing construction because Commissioner Marine-Lombard "will not always be the ATC commissioner and . . . it is not the Court's role to rely on the interpretation of an enforcement agency when determining whether a statute is constitutional."

We disagree with the district court's assessment that the State's narrowing construction should be rejected. "Administrative interpretation and implementation of a regulation are . . . highly relevant to our analysis, for '[i]n evaluating a facial challenge to a state law, a federal court must . . . consider

any limiting construction that a state court or enforcement agency has proffered.'" *Rock Against Racism*, 491 U.S. at 795–96 (second alteration in original) (quoting *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982)).  When the state official charged with implementing a statute has provided an interpretation of how to enforce it, we will defer unless that explanation is inconsistent with the statutory language. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013).  Such officials often, perhaps always, have temporary tenure in office, but that has not been a reason courts have employed to ignore interpretive limits they state.

In addition, there is no suggestion in this record that the legislature was seeking to affect dancers other than those at establishments in which erotic dancing was the norm, or that the legislature specifically intended to cover those at traditional theater and ballet.  Nor is there evidence that the Act has been applied to such performances.  We conclude that the limiting construction is readily applicable to the Act.  The remaining reach of the Act does not constitute "overbreadth" that is both "real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

To conclude, we focus specifically on the fourth *O'Brien* factor.  We restate that narrow tailoring exists when the "regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Albertini*, 472 U.S. at 689.  The government must show "the remedy it has adopted does not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 665 (1994) (quoting *Rock Against Racism*, 491 U.S. at 799).  This burden has been carried, both by the State showing how the Act applies to the kinds of performances at issue and by providing the limiting construction that excludes performances that would be beyond its legitimate regulatory interests.

No. 17-30292

Consequently, we conclude the district court erred in holding that the Act was overbroad, either for the lack of narrow tailoring necessary under *O'Brien* or for "substantial overbreadth" under such cases as *Broadrick*.[3]

### III.   *Vagueness*

####   A.  *Plaintiffs' standing*

Before proceeding to consider the merits of the vagueness claim, we address questions related to standing.  Jane Does II and III claim that the Act is facially vague because they cannot discern from the Act how little they can wear in order to be "shot girls."  In addressing that claim, the district court noted that the Act did not govern the clothing requirements for shot girls — Subsection B of Sections 26:90 and 26:286 did.  On that basis, the court held that Jane Does II and III lack standing to challenge the Act in some of its applications.  We discuss later some ambiguity in this section of the district court's decision.

The other plaintiff, Jane Doe I, has remained employed as an erotic dancer.  She believed she would no longer be able to continue with such employment, though, when the ATC began enforcing the Act in New Orleans.  She, in conjunction with the other plaintiffs, claims that the Act is "unconstitutionally vague because it fails to precisely define the phrase 'breasts or buttocks are exposed.'"  By failing to clarify what degree of exposure of the breasts or buttocks is impermissible, they argue the Act provides "no clear guidance to [them], other similarly-situated adults, adult entertainment

---

[3] Among the other points the State makes is that "[a]n overbreadth challenge is not appropriate if the First Amendment rights asserted by a party attacking a statute are essentially coterminous with the expressive rights of third parties." *Hicks*, 980 F.2d at 969. The State also argues the Act has no "real" overbreadth and the plaintiffs have failed to identify any impermissible applications of the Act.  It is unnecessary to discuss these arguments in light of the manner in which we have resolved the somewhat overlapping questions of overbreadth and narrow tailoring.

industry club owners, law enforcement, or [the State] as to how it should be interpreted and applied in this regard." The district court addressed that claim by, as the State acknowledges, by adopting the Plaintiffs' position.

The question of standing posed here is whether any plaintiff can raise the remaining facial vagueness claim. The State contends that no plaintiff has such standing. Its argument is two-fold. The State first construes the court's order as holding both that Jane Doe I had standing to challenge the Act because she was governed by it and that Jane Does II and III did not have standing because they were shot girls. The State argues that the court should not have considered Jane Doe I's facial vagueness claim because she also does not have standing to raise it, as her conduct is "clearly covered" by the Act.

The plaintiffs, on the other hand, contend that they each have standing to challenge the Act for facial vagueness. They do not explicitly make a separate issue of the dismissal of the facial vagueness claim raised by Jane Does II and III. They did not need to do so, as a trial court's decision "must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.'" *NLRB v. Kentucky River Cmty. Care, Inc.*, 532 U.S. 706, 722 n.3 (2001) (quoting *SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943)).[4] The plaintiffs instead argue that they each have standing to challenge the Act because they "seek to engage in the constitutionally-protected expression of erotic dance" and are "entitled to fair warning as to what conduct the [Act] seeks to" prohibit. *Cf. Fernandes v. Limmer*, 663 F.2d 619, 625 (5th Cir. Unit A 1981). Therefore, it is proper for us to consider the standing of each of the three plaintiffs.

---

[4] A cross-appeal "is generally not proper to challenge a subsidiary finding or conclusion when the ultimate judgment is favorable to the party cross-appealing." *Cooper Indus., Ltd. v. National Union Fire Ins. Co. of Pittsburgh*, 876 F.3d 119, 126 (5th Cir. 2018) (quoting *National Union Fire Ins. Co. of Pittsburgh v. W. Lake Acad.*, 548 F.3d 8, 23 (1st Cir. 2008)).

As to the standing of Jane Doe I, the complaint states she was 20 years old. That should mean her 20th birthday was no later than the day the complaint was filed, which was September 22, 2016. She would have become 21 years old well before now. It follows that Jane Doe I is no longer affected by the Act's age requirement and the uncertainties of how little can be worn by younger dancers. This court is without constitutional jurisdiction to resolve moot claims. *See National Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013). We thus consider whether the other plaintiffs have standing to raise the remaining facial vagueness claim.

We are guided by a few established principles. Though this suit has been labelled a facial challenge for vagueness, in which a party to whom the law can constitutionally be applied may bring claims for others to whom it allegedly cannot, there is still an Article III and prudential standing minima that must be satisfied. These standing requirements are as applicable to this vagueness claim as they were to the overbreadth claim we analyzed as follows:

> In First Amendment facial challenges, federal courts relax the prudential limitations and allow yet-unharmed litigants to attack potentially overbroad statutes — "to prevent the statute from chilling the First Amendment rights of other parties not before the court." At the same time, Article III standing retains rigor even in an overbreadth claim.

*Fairchild v. Liberty Indep. Sch. Dist.*, 597 F.3d 747, 755 (5th Cir. 2010) (citations omitted) (quoting *Secretary of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–58 (1984)). We have held that the Article III "rigor" requiring "a constitutional harm adequate to satisfy the injury-in-fact requirement" can be found in "[c]hilling a plaintiff's speech." *Id.* at 754–55 (quoting *Houston Chronicle Publ. Co. v. City of League City*, 488 F.3d 613, 618 (5th Cir. 2007)). We also have stated that a plaintiff alleging "a chilling of speech because of the mere existence of an allegedly vague or overbroad statute can be sufficient injury to support standing." *Center for Individual Freedom v. Carmouche*, 449

No. 17-30292

F.3d 655, 660 (5th Cir. 2006). That analysis might fit Jane Does II and III, who became shot girls because their desire to dance had been chilled by the vagueness of the Act. That concept of injury could not save Jane Doe I, though. The change wrought by the Act only has application to those who want to engage in erotic dance and are not yet 21 years old. In no respect is a 21-year-old chilled in her exercise of free expression by the Act challenged here.

We thus return to the district court's decision about the standing of Jane Does II and III. The court held that a different subsection of the statute governed clothing for those serving or selling alcohol, and thus they could not challenge the amendment governing erotic dancers. Immediately after that holding, the court wrote that "the Plaintiffs also argue that [the Act] fails to precisely define the phrase 'breasts or buttocks are exposed to view,' and therefore leads to confusion about how much of an erotic dancer's buttocks or breasts must be 'in view' to trigger the Act." The court then cited a portion of the plaintiffs' motion for a preliminary injunction in support. There, all three plaintiffs collectively argued that the Act was facially vague because it "fails to precisely define the phrase 'breasts or buttocks are exposed.'" At the conclusion of its analysis, the court wrote the "Plaintiffs . . . demonstrated a likelihood of success on their vagueness challenge."

These excerpts could be interpreted to mean the court considered the facial vagueness claim pertaining to erotic dancers to have been raised by all three plaintiffs. Quite differently, the State reasonably relies on the court's rejection of standing for Jane Does II and III to argue that those plaintiffs do not have standing to raise the facial vagueness challenge. Regardless of the correct interpretation, the legal issue is subject to our *de novo* review.

As shot girls whose clothing requirements are set forth in a separate statutory subsection, Jane Does II and III would lack standing to raise a vagueness claim as to the erotic dancing limitations if their only contention

19

was that the Act left them uncertain as to the necessary attire for shot girls. They alleged more, though. They assert they want to "engage in the constitutionally-protected expression of erotic dance" but are deterred from doing so because of the Act's vagueness. The complaint indicates that Jane Does II and III were dancers but became shot girls because of the uncertainties of how little clothing they could wear as dancers. They both complain of lesser income as shot girls and describe the economic difficulties they are facing. Jane Doe III specifically claims that should the Act be invalidated, she "would immediately return to erotic dancing as her preferred vocation."

With those as the relevant allegations, we must decide if each plaintiff has claimed she is "'seriously interested in' engaging 'in a course of conduct arguably affected with a constitutional interest, but proscribed by statute.'" *Fairchild*, 597 F.3d at 755 (quoting *Int'l Soc. for Krishna Consciousness v. Eaves*, 601 F.2d 809, 818 (5th Cir. 1979) and *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 545 (5th Cir. 2008)). In one applicable precedent, the plaintiffs facially challenged a state's disclosure requirements for political committees and certain qualifying individuals. *Justice v. Hosemann*, 771 F.3d 285, 288–90 (5th Cir. 2014). The plaintiffs had engaged in political advocacy in the past. *Id.* at 290. They did not pursue any kind of political activity in the campaign for a 2011 ballot initiative, though, "because of what they view[ed] as Mississippi's onerous and complicated disclosure requirements." *Id.* The *Justice* plaintiffs argued that the disclosure laws were facially vague because they "relegated them to the sidelines [in 2011] by 'creat[ing] a significant chilling effect that ha[d] prevented — and continue[d] to prevent — [them] and other similarly situated groups from exercising their constitutional rights of free speech and association.'" *Id.* We held that the plaintiffs had standing to challenge the laws based on their "legitimate fear of criminal penalties for failure to comply with" the disclosure requirements. *Id.*

at 291.   We reasoned that "[t]heir past enthusiastic participation in the political process" and their membership in political organizations showed that, if not for Mississippi's disclosure laws, they would again engage in political activism that implicated the disclosure laws.  *Id.*

We conclude that Jane Does II and III have sufficiently expressed a "serious interest" in returning to erotic dancing, which is the conduct that is undoubtedly affected by the Act.   Their allegations show they had been dancers, remain employed at sexually-oriented businesses, and have expressed a desire to return to their former vocation for both monetary and expressive reasons.  The State does not contest the plausibility of their allegations.  They have standing to raise a facial challenge to the statute.

### B.  Merits of vagueness claim

A law can be unconstitutionally vague if it "fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited." *Kucinich v. Texas Democratic Party*, 563 F.3d 161, 166 n.4 (5th Cir. 2009). "When speech is involved, rigorous adherence to th[at] requirement[] is necessary to ensure that ambiguity does not chill protected speech."  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).   Flexibility is permitted but not at the expense of a statute's failure to provide "fair notice" to people who wish to avoid its prohibitions.  *Service Emps. Int'l Union, Local 5 v. City of Houston*, 595 F.3d 588, 596–97 (5th Cir. 2010).

The plaintiffs maintain that the Act's plain language and the State's interpretation of the text amounts to a "total ban" on erotic dancing for individuals who are 18 to 20 years old.   The Act, though, only applies to entertainers at alcohol-licensed establishments.  *See* LA. REV. STAT. §§ 26:90, 26:286.   On its face, the Act does not appear to apply to sexually-oriented businesses that are not licensed to serve alcohol.  The parties have not cited any regulation of non-alcohol-licensed sexually-oriented businesses.   We

cannot conclude on the record before us that the Act operates as a complete ban on the plaintiffs' ability to engage in erotic dancing.

The State contends that the Act is not vague because "wearing bikinis covering their breasts and buttocks" is the "obvious answer" for individuals between the ages of 18 and 20 to conform their conduct to the statute. Plaintiffs, though, desire to express themselves through dance while wearing as little as possible. Knowing a level of clothing that may be safely in excess of the minimum does not inform these plaintiffs of what they seek to know. A premise for the State's argument is that vagueness claims can be defeated by identifying conduct that clearly would avoid violating the enactment. A premise for plaintiffs is there is a right to know with better precision the boundary between proper and improper expression.

We see the question, then, as whether there a right recognizable in a vagueness challenge to know the minimum conduct that is sufficient to comply with a statute? We have already mentioned that regulatory ambiguity should not "chill protected speech." *Fox Television Stations*, 567 U.S. at 254.

The State answers our question by using caselaw they say stands for the proposition that "[p]erfect clarity and precise guidance are not required." That quoted phrase came from a case dealing with regulation of noise from events at New York City's Central Park. *See Rock Against Racism*, 491 U.S. at 794. The city's noise standard stated "'its goals [were] to provide the best sound for all events' and to 'insure appropriate sound quality balanced with respect for nearby residential neighbors and the mayorally decreed quiet zone of [the] Sheep Meadow.'" *Id.* (alteration in original). The Court relied on official interpretations and the historical application of the noise standards, as those were "highly relevant" to its analysis in the sense that they become limiting constructions. *See id.* at 795–96. Acknowledging the discretion placed in the hands of city officials, the Court held the guidelines still withstood a facial

challenge. *See id.* One of the plaintiffs' objections to the bikini argument here is that the construction has come up in litigation, not in the form of administrative guidance to the affected businesses and dancers.

The State also cites a case discussing Detroit's zoning for theaters projecting sexually explicit movies. *See Young v. American Mini Theatres, Inc.*, 427 U.S. 50 (1976). There, despite some ambiguity in how much sexual content the movies needed to have to fall afoul of the ordinance, the plaintiffs conceded that because of the movies they wanted to exhibit, "there [was] no uncertainty about the impact of the ordinances on their own rights." *Id.* at 59. "The application of the ordinances to respondents [wa]s plain," causing the Court to reject a facial vagueness challenge in which the plaintiffs sought to rely on uncertainty about other situations. *Id.* at 61. To correlate that rule to these plaintiffs, they would need to know that what they want to do clearly violates the Act. What they want to do is wear as little as legally permitted.

The Jane Does are not in the category of the plaintiffs in these precedents. Unlike *Rock Against Racism*, there are not authoritative limiting constructions. Those interpretations come from state courts[5] and official administrative guidance. *See Service Employees*, 595 F.3d at 597. The record does not contain evidence of a practice consistent with the State's litigation argument that a bikini is sufficient, and the Commissioner's affidavit does not address the point. *See City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 n.11 (1988). Unlike *American Mini Theatres,* the plaintiffs have not conceded they expose their breasts or buttocks to view when erotically dancing. There is no clarity to them as to what they must wear not to fall within the prohibitions of the Act should they again be dancers. *Rock Against Racism*

---

[5] This court does not have the authority to narrow a vague state regulation without an authoritative state interpretation. *Service Employees*, 595 F.3d at 597.

discusses the flexibility that must exist in many regulations, such as for the noise level permitted in Central Park. The fact questions created by the Act in this case require better guidance than the State has so far seen fit to provide.

We summarize. The Act added the age requirement that "entertainers whose breasts or buttocks are exposed to view . . . shall be twenty-one years of age or older." §§ 26:90(E), 26:286(E). The State acknowledges that the Act does not prohibit individuals between the ages of 18 and 20 from being dancers whose breasts and buttocks are *not* exposed to view. What such exposure involves is affected by the fact that Subsection E is "[s]ubject to the provisions of Subsection D." §§ 26:90(E), 26:286(E). Subsection D prohibits alcohol-licensed establishments from permitting "any person . . . to perform acts of . . . [t]he displaying of the pubic hair, anus, vulva, genitals, or nipple of the female breast." §§ 26:90(D)(3), 26:286(D)(3).

Reading the two sections such that neither is superfluous is a requirement for interpreting Louisiana statutes "if a construction can be legitimately found that will give force to and preserve every word of the statute." *Burmaster v. Plaquemines Par. Gov't*, 982 So.2d 795, 804 (La. 2008) (citation omitted). Thus, performers over 21 years old who are allowed to have their breasts or buttocks "exposed to view" by Subsection E must still avoid exposing what is prohibited by Subsection D. Performers who are between the age of 18 and 20, though, are not informed what beyond the list in Subsection D must be covered in order not to expose their breasts or buttocks. That ambiguity means the Act "does not sufficiently specify what those within its reach must do in order to comply." *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610, 621 (1976). "Although due process does not require 'impossible standards' of clarity, this is not a case where further precision in the statutory language is either impossible or impractical." *Kolender v. Lawson*, 461 U.S. 352, 361 (1983) (citation omitted). Indeed, Subsection B and

No. 17-30292

Subsection D of Sections 26:90 and 26:286 indicate the State is quite capable of particularizing exposure limits.

The penalties for misinterpretation are significant.  An alcohol-licensed establishment that permits individuals between the ages of 18 and 20 to be entertainers whose breasts or buttocks are exposed to view can be fined and have its alcohol license revoked or suspended.  §§ 26:90(I), 26:286(I).  Someone under the age of 21 who performs as an entertainer whose breasts or buttocks are exposed to view can be fined and incarcerated.  § 26:171.

The difficulties we have pointed out about the Act do not remove the State's "undeniably important" interest in combating the harmful secondary effects associated with nude dancing.  *Pap's A.M.*, 529 U.S. at 296.  Combining alcohol and erotic dancing has been found to be a combustible mix.  *Illusions– Dallas*, 482 F.3d at 313.  "As weighty as this concern is, however, it cannot justify legislation that would otherwise fail to meet constitutional standards for definiteness and clarity."  *See Kolender*, 461 U.S. at 361.  Among the means of ameliorating such ambiguities, none of which have been employed here, are a statutory reasonable-person standard, a scienter requirement, or a required predicate warning.  *See Munn v. City of Ocean Springs*, 763 F.3d 437, 440 (5th Cir. 2014); *Hill*, 530 U.S. at 732; *Fairchild*, 597 F.3d at 762.

We hold there is a substantial likelihood that the plaintiffs will prevail on the merits of their vagueness claim.  They have shown that the Act has "the capacity 'to chill constitutionally protected conduct, especially conduct protected by the First Amendment.'"  *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546 (5th Cir. 2008) (quoting *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988)).  Specifically, they have shown that the Act has the capacity to deter the constitutionally-protected conduct of erotic dancing by failing to provide entertainers between the ages of 18 and 20 with "fair notice"

25

as to what they must do to avoid being subjected to a penalty if their breasts or buttocks are "exposed to view." *See Service Employees*, 595 F.3d at 597–98.

The Act's vagueness and its resultant capacity to chill protected conduct support finding that the remaining injunctive relief requirements are satisfied. The "loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (quoting *Palmer ex rel. Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009)).  The plaintiffs' injuries outweigh any harm to the State because the State "can never have a legitimate interest in administering [a regulation] in a manner that violates federal law." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 471 (5th Cir. 2017).  Finally, "injunctions protecting First Amendment freedoms are always in the public interest." *Texans for Free Enter.*, 732 F.3d at 539 (quoting *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)).

We have disagreed with the district court's determination that the statute fails to comply with time, place, and manner standards on expressive conduct under *O'Brien* and that the statute is overbroad.  Nonetheless, our agreement that the statute is unconstitutionally vague, and our analysis that the standards for an injunction have been met, lead us to AFFIRM.